ABIJAH HURD *v.* THE RUTLAND & BURLINGTON RAILROAD CO.

*Interest of Railroad corporations in land. Obligation of land owners and Railroad corporations to fence. Liability for omission to fence. Farm crossings. Non-performance of agreement to erect gates.*

The land, which is taken under the right of eminent domain, which exists in this state, for the use of a railroad, becomes so far the property of the railroad corporation, that their right is exclusive in its use and possession during the existence of the easement ; and those from whom the land is taken, retain no right to its use, or occupation, for pasturage or otherwise.

At common law, the owner of a close was not obliged to fence against the cattle of the occupant of an adjoining close. The statute imposing the duty on adjoining proprietors of land to erect and maintain fences, recognized the same principle ; for the object and design of fencing is not to keep the cattle of others off the premises, but to keep at home the cattle of the occupant. This principle has equal application to the owners of land adjoining public highways ; and where no statutes exist, and no obligation is imposed by covenant or prescription, a railroad company is not bound to fence their land.

Under the provisions of section fourteen of the Act incorporating the Rutland and Burlington Railroad Company, requiring them " to build and maintain a " sufficient fence upon each side of their road through the whole rout thereof," if the cattle of the owners of adjacent land are found upon the road, and are injured, through the negligence of the corporation to make and maintain a sufficient fence, the corporation are chargeable with the risk, and are subject to such damages as may be sustained thereby.

And where a farm-crossing is constructed over the railroad for the benefit of an adjacent land owner, it is the duty of the corporation under that statute to guard it by a continuous fence, and to erect suitable bars or gates, in order to give con-

Hurd *v.* Rutland & Burlington Railroad Co.

venient access to it ; and if injury arise through the want of such bars or gates, the corporation will be liable, unless some facts exist, by which they are relieved from the responsibility.

If the land owner refuse to have bars placed at such crossing, and forbid the corporation to make them, when they offered to do so, or were in the act of erecting them, this, as against such land owner, would operate as a legal excuse for their omission to build the fence, even if an express agreement had been made by the parties for the erection of gates instead of bars. For the non-performance of the agreement, and the refusal to erect gates, as stipulated, the remedy of the party would be only by action on the contract for damages. And the effect of the refusal to have bars erected would be to replace upon the land owner the obligation which rested upon him at common law, to keep his cattle on his own premises, and from the premises and railway of the corporation.

TRESPASS for injury to the plaintiff's cattle. Plea, the general issue, and trial by jury.

On trial, it appeared that the defendants' railroad was constructed through the pasture lands of the plaintiff, under an award and appraisal of damages by commissioners duly appointed by the County Court; that by the award, it was provided that the plaintiff should have furnished for him, by the defendants, two passes or farm crossways over the railway, and one pass under the railway; that subsequently, by agreement between the parties, the plaintiff gave up one of the over-crossings ; that the defendants entered upon the lands so awarded to them and constructed their road, and, in pursuance of their agreement, furnished to the plaintiff one crossing over their railroad, besides the under pass, and protected it on each side by a suitable and sufficient cattle guard, and also made fences of proper height and strength on each side of the road, through the plaintiff's farm, but constructed no gates or bars, at the entrance of the crossing.

The plaintiff gave evidence, tending to prove that by the agreement the defendants were to provide railroad gates, so called, at the crossing, instead of the bars usually furnished by them in such cases ; that the defendants did not furnish gates in pursuance of the agreement, nor erect any bars at the crossing, and in consequence thereof, about the twenty fifth of August, 1850, an ox of the plaintiff was upon the crossing and upon the track of the defendants' road, and was so injured by a locomotive engine and cars, which were running on the track, that it was rendered of no use to the plaintiff; and that afterwards, on the thirty-first of May, 1851,

a cow of the plaintiff was upon the same crossing and was killed in like manner.

The defendants gave evidence tending to prove that by the agreement with the plaintiff, the plaintiff was to have a free and open pass over the road at said crossing, at all times, and at his own risk; that before the injury to the ox, the agents of the defendants, while putting in bars at said crossing, were expressly forbidden by the plaintiff to do so, he insisting that he was to have a free and open pass; and that subsequently, after the ox was injured and before the cow was killed, the plaintiff, on application to the defendants to put in gates, refused to allow bars to be put in at the crossing, *claiming at that time, that he was entitled to gates.* No evidence was given of any negligence or willfulness, on the part of the persons running the engines at either time.

The defendants insisted that if the plaintiff had any remedy against them, the suit should have been in case, and not in trespass. But the court overruled the objection.

The defendants requested the court to charge the jury, that if they found from the evidence, that the cattle, at the time of the several injuries complained of, were not in charge of any person, but were at large upon the premises of the defendants, and were there killed, without any negligence or willfulness on the part of the defendants, or their agents, no recovery could be had in this action. But the court declined so to charge the jury, but did in substance charge them, that if the defendants constructed the farm crossing as an open pass in the plaintiff's pasture, for the purpose of permitting the cattle of the plaintiff, when in the pasture, to cross the railroad at their will, and so constructed and left open the pass at the request of the plaintiff, the cattle crossed and were upon the railroad at the risk of the plaintiff, and the defendants were not liable for the injury complained of, as there was no evidence that it was willfully or negligently done; but that, if the defendants so constructed and left open the pass without the consent or agreement of the plaintiff, and for the purpose aforesaid, then the cattle would be upon the railroad at the risk of the defendants, and the plaintiff would be entitled to receive such damages as he had sustained in consequence of the injuries of which he complained.

Verdict for plaintiff. Exceptions by defendants.

*J. A. Beckwith* for defendants.

The defendants are not liable, because the cattle at the time of the injury were wrong doers. *Clark* v. *Adams*, 18 Vt. 425. *Tonawanda R. R. Co.* v. *Munger*, 5 Denio, 255. *Towns* v. *Cheshire R. R. Co.* 1 Foster N. H. R. 366. No. 2, Law Register 97.

If blame is to be imputed to defendants, it is only by reason of the bars being down, and the remedy then is clearly case, and not trespass.

The owner of cattle permitted to enter unenclosed lands, takes the risk of accidents. 8 Barr. 472, 4 Exchq. Rep. 586.

But these defendants had nothing to do with the injuries. Chit. Pl. 80, 81, Car. & P. 499. 1 East, 106.

But if defendants are liable, not in this form of action. *Morly* v. *Gainsford*, 2 H. Blackstone's R. 442. *Broughton* v. *Whallon*, 8 Wend. 474. *Fox* v. *Northern Liberties*, 3 Watts & S. 103.— *Phila. Germ. & Nor. R. R. Co.* v. *Wilt*, 4 Wharton 143. *Gordon* v. *Rolt*, 4 Exchq. 365. *Sharrod* v. *Railway Co.*, 4 Exchq. 580. 1 Smith's leading cases. *Scott* v. *Shepherd*, 479.

But if liable, and in this form of action, then the rule of damages in the charge was erroneous.

*D. Wooster* for plaintiff.

In the first place, is the action in this form sustainable against the defendants? We think it is.

An action of trespass *vi et armis*, will lie, and it is believed without exception, for injury done to property; and where the act is *immediately* injurious, it is therefore necessarily accompanied with force. And it is immaterial whether the damage be done by the defendant himself, or his servants by his direction, for the action will lie against the master, as well as against the servant. 3 Blackstone's Com. 154. Noys' Maxims, Ch. 44. 22 Vt. 477.

An action of trespass will lie for an immediate injury, no matter whether the act causing the injury be lawful or unlawful, and although the injury be accidental, or contrary to the defendant's intentions, if the act be careless or unnecessary. *Cole* v. *Fairlee*, 11 Mass. R. 137.

An action of trespass will lie for damage done against a corporation for the acts of its servants, while acting within the limits of the authority delegated to them.

In any case between two parties, where both are equally innocent as to willfulness or intentional wrong, and damage ensues, he who was in fault must suffer.

In this case, the jury found the facts in favor of the plaintiff, and gave him a verdict accordingly, and shall not the verdict stand? A court will not turn a party round and drive him to a new action, on a doubtful technical question, when substantial justice has been done. *Stalen* v. *Baker*, 2 Will. 362.

The defendants complain that the Court refused to charge the jury as requested. The defendants requested the Court to charge the jury, that if they found from the evidence, that the cattle at the time of the accident or injuries complained of in the declaration, were not in charge of any person, but were at large, upon the premises of the defendants, and were killed without any negligence or willfulness on the part of the defendants or their agents, no recovery could be had in this action. Now a short answer to this, as appears to us, is sufficient; that a portion of this charge would have been improper, for there was no evidence in the case to support it, and the rest of it in substance was given in the charge to the jury.

A corporation is an intangible, soulless body, exists only in contemplation of law, has neither hands nor eyes, and can do nothing except through the medium of servants or agents. In this case, the *cars were running from the north*, and they could not do so, without the application of human agency.

It is not necessary in this case to show any knowledge, any consent or special direction of the company to do the injury. When liability results from the relation which exists between them and their agents or servants, who are the creatures of their own selection, the company are responsible for their acts. 1 Mass. R. 530, 22 Vt. 477, 2 Kent's Com. 283.

The opinion of the court was delivered by

ISHAM, J. As no exceptions were taken to the admission of the testimony under the general issue, no questions now arise as to its admissibility under that plea.

The declaration is in trespass, and contains two counts; in the first of which it is alleged that the injury arose by the act of the defendants' servants, in running their locomotive engine against an

ox of the plaintiff, whereby the animal was injured and rendered of no value : in the second count, the plaintiff complains that the defendants drove their engine against a cow belonging to the plaintiff, whereby the animal was killed. For these several injuries, occurring at different times, this action is brought. That the cattle were injured, and in fact destroyed by an engine of the defendants, while under the management and direction of their agents and servants, is not disputed. But whether the injury arose under circumstances which render the defendants liable in this action, is the general question involved in the case.

This railroad was constructed over the farm of the plaintiff, under an assessment of damages by commissioners. No objections have been taken or urged against the correctness of the proceeding by which the land was thus appropriated, nor has the title and right of the defendants to the exclusive use and possession of the premises been denied. The land was taken under the right of eminent domain which exists in the State, in the exercise of which the State directs not only the quantity of land to be taken, but the extent of that interest which is required to answer the public purposes for which it is appropriated. 2 Smith Lead. Cas. 190. *Heywood* v. *City of New York*, 5 Law Reporter, 404.

If that interest is regarded as a mere servitude or easement, the land nevertheless becomes so far the property of the corporation that their right is exclusive in its use and possession during its existence, as much so as that of the owner or occupant of the adjoining land. Those from whom the land was taken retain no right to its use or occupation for pasturage or otherwise. The object for which it is appropriated and used, is wholly inconsistent with such right on the part of the former owner, as well as with that security to themselves, and safety to the public, which is necessary to enable the corporation to enjoy the franchises granted by their charter.

In the construction of this road, and under the final arrangement of the parties, the defendants were to make for the plaintiff's use two farm-crossings, one over and the other under the railway; both of which were made agreeably to that arrangement, and the over-crossing was protected by suitable cattle-guards. We learn also from the case, that fences on both sides of the road were erected of lawful height and strength, except at the entrance of this over-crossing. The cattle of the plaintiff were pastured in an ad-

joining field, and passed through over the entrance, at this over-crossing, to the track of the road where the injuries were sustained. In relation to the general liability of the defendants, it is proper also to observe, that no evidence was introduced of any *negligence* or *willfulness* on the part of those having charge of the engine, at the time the injuries were committed. We are therefore to assume, that on those different occasions the engine was conducted with proper caution, and that the injuries could not have been avoided, by the exercise of reasonable prudence and care.

The main question in the case, therefore, is resolved into the inquiry whether a liability in this action is imposed on the defendants, by their neglect or refusal to erect a suitable fence by this over-crossing, so as to prevent the plaintiff's cattle from passing from the adjoining field to and upon the track of this road. For if the cattle escaped, or were found upon this railway through a want or defect of fences, which the defendants should have erected and maintained, the injuries sustained would be a consequent of that wrong, and the defendants in some way would be responsible for the damages sustained.

. At common law, the owner of a close was not obliged to fence against the cattle or animals of the occupant of an adjoining close; " for every man's land is in the eye of the law inclosed and set " apart from another's, either by a visible and material fence, or by " an ideal invisible boundary existing only in contemplation of " law, and in either case every entry or breach of a man's close, " carries along with it some damage, for which compensation can " be obtained by action." 3 Black. Com. 209. *Wells* v. *Howell,* 19 Johns. 385. The owners of adjoining lands were bound to keep their cattle on their own premises, and prevent them from wandering on the land of others. The statute imposing the duty on adjoining proprietors of land to erect and maintain fences recognized the same principle. For the object and design of fencing is not to keep the cattle of others off their premises, but to keep their own at home. The owner of a close is not required to guard against the intrusion of cattle or animals belonging to others, but each are required to prevent their own animals from entering upon the close of the other. *Rust* v. *Low,* 6 Mass. 94. Gale & What. on Eas. 297. *Clark* v. *Adams,* 18 Vt. 425. *Knight* v. *Abert,* 8 Barr. 472. 3 Kent's Com. 535. This principle, derived not only from the common

law, but from the general statutes prescribing the duty of erecting fences, had equal application to the owners of land adjoining public highways ; 1 Cowen 88 (note), 2 Smith's Lead. Cas. 184. (notes), and applies with still greater propriety and force to land taken and used for railway purposes. Where no statute exists, and no obligation is imposed by covenant or prescription, a railroad company is not bound to fence their land, for it has been justly observed, *Vandegrift* v. *Redeker*, 2 Amer. Law Journ., 116 ; 1 Law Register 104 (note), " that the owners of adjoining lands and " strangers are bound to keep all cattle off the railroad track, as " much as they are bound to keep them off each other's farms ; and " should they fail to do so, they must respond in actions for all con- " sequential damages." These principles have been so often and directly determined in this country in relation to railways, that we are not at liberty to consider them of doubtful existence or application ; they were adopted in Maine, where no obligation is imposed by charter, on a railroad corporation to erect and maintain fences along the line of their road. *Morse* v. *The Boston & Maine Railroad Co.* 2 Cush. 534, *Perkins* v. *The Eastern Railroad Co.* 29 Maine 307. So in New York, in the cases of *Tonawanda Railroad Co.* v. *Munger*, 5 Denio 258 ; and *Clark* v. *The Syracuse Railroad Co.* 11 Barb. 277. 4 Comst. 357, and in Pennsylvania in the case of the *New York & Erie Railroad Co.* v. *Skinner*, 1 Law Register 97. 7 Harris Rep. 298, S. C.

If this case was to depend upon principles of common law, it is evident that no action could be sustained for the injuries complained of in this declaration. For the plaintiff would have been, in fault in permitting his cattle to wander from his own premises on the track of this road. The cattle would have been wrongfully there, and all accidents would have been at the risk of the owner. The defendants would not have been liable for injuries arising from the plaintiff's neglect, unless the injuries might have been avoided by the exercise on their part of reasonable care and prudence. *Bridge* v. *Grand Junc. Railroad Co.* 3 Mer. & Wels. 244; *Dinos* v. *Pettey*, 15 Ad. & E. N. S. 280. *Trow* v. *Vt. Central Railroad Co.* 24 Vt. 487. By the 14th section of the act of incorporation of the defendants, Acts 1843 p. 55—a duty is imposed on them " to build and maintain a sufficient fence upon each side of their " road through the whole route thereof." This provision of the

act imposed a duty or an obligation upon the defendants, which did not exist at common law. The object of the enactment was obviously to afford protection to the adjacent owners of land, and to relieve them, so far as a fence of that character will have the effect, from the perpetual and onerous charge of keeping their cattle and animals from the premises and railway of the defendants, and to cast that duty upon the corporation. In other words, the defendants, under the provisions of that act, are required to build and maintain a fence for the purpose of keeping the cattle of owners of adjacent land from the premises and track of the road; and as a necessary consequence, if the cattle of the owners of adjacent land are found upon the road, and are injured by the defendants, through their negligence to make and maintain a sufficient fence, they are chargeable with the risk, and are subject to such damages as may be sustained thereby. The principles of law applicable to such a case were well considered in the case of *Sharrod* v. *N. Western Railway Co.* 4 Wels. Hurlst. & Gord. 584, in which PARK, B. observed, "That if the cattle had an excuse for being on the road, "as if they had escaped through defect of fences which the com- "pany should have kept up, the cattle were not wrong doers, they "had a right to be there, and their damage is a consequent damage, "from the wrong of the defendants in letting their fences be in- "completed, or out of repair, and may accordingly be recovered "by action."

It was evidently the duty of the defendants, under that statute, to guard that farm-crossing by a continuous fence, as much as any other part of the road, though a different rule would necessarily apply to all road-crossings; and for the purpose of securing to the plaintiff the benefit of that farm-crossing, as well as to prevent his cattle from wandering upon the track of the road, the defendants should have erected bars or gates, such as would be in conformity with general usage for such purposes. As the injury arose at that place, and for the want of a suitable fence of that character, the liability of the defendants would seem to be a natural consequence, unless some other facts exist, by which they are relieved from that responsibility. If the plaintiff refused to have bars placed there, and forbade the defendants to make them when they offered so to do, or were in the act of erecting them, we entertain no doubt, that as against this plaintiff, it would operate as a legal

excuse for their omission to build the fence. The duty created by the statute was personal to this plaintiff, and such others as were adjoining landholders ; and each adjoining proprietor, so far as he personally was concerned, might waive or discharge the defendants from its performance, and after such waiver he would be estopped from setting up the want of a sufficient fence, as a substantive ground of complaint. The erection of sufficient bars by the defendants, would be a full compliance with their duty *under the statute ;* for it would give to the plaintiff the benefit and use of his farm-crossing, as well as prevent his cattle from passing upon the track of this road. From the authorities, this result would seem to follow, even if an express agreement had been made by the parties for the erection of gates, instead of bars. For, by the erection of sufficient bars, the *duty imposed by the act* would have been complied with; and for the non-performance of the agreement and the refusal to erect gates, as stipulated, the remedy of the party would be only by action on the contract, for damages. This was so expressly ruled in the case of *Norvel* v. *Smith,* Cro. Eliz. 709. That was an action of trespass, to which the defendant plead an exchange of lands, and an agreement that the plaintiff should make and maintain the fences between them, and that the defendant's cattle escaped through a defect of fences. On demurrer, the court ruled, " that the plea was ill, for his agreement cannot be a " bar to the action, but the defendant is put to his action on the " case upon the promise, if he performs it not. And if the agree- " ment had been by deed, it had not been a bar, but he only should " have been put to his action of covenant." The same doctrine was recognized in *Rust* v. *Low,* 6 Mass. and in *Kyle* v. *The Auburn & Rochester Railroad Co.,* 2 Barb. Ch. R. 500. The effect, therefore, of a refusal to have bars erected, is to replace on the shoulders of the plaintiff, that obligation which rested upon him at common law, to keep his cattle on his own premises, and from the premises and railway of the defendants ; and if, after that refusal to have bars erected, the cattle were found on the road, they were wrong doers—the plaintiff was in fault, and chargeable with negligence, to the same extent and degree as if no statute had been passed, imposing the duty of fencing the road upon the defendants.

The application of these principles to the case is not a matter of great difficulty or doubt. On the trial of the case before the jury,

the plaintiff gave evidence tending to prove an agreement to provide gates instead of bars at this crossing. We have seen that this testimony is irrelevant, and would have no effect upon the legal result of the case, if the fact was true. On the other hand, the defendants gave evidence tending to prove an agreement that it was to be a free and open pass, and at the risk of the plaintiff. And the court charged the jury, that if that crossing was left as an open pass at the request of the plaintiff, the action could not be sustained; and on this question the whole investigation of the case was made to depend. The jury, by their verdict, have found that no request to have that remain as an open pass was ever made; and on this issue, so presented to them by the court, a verdict was rendered for the plaintiff. And the plaintiff is entitled to the benefit of the fact, that the crossing was left open without his consent. But this is far from disposing of the material question in the case, or of its real merits. The plaintiff did not consent that it should remain as an open pass, because he insisted upon the erection of gates, and required the performance of that which, under the act, and so far as a defense to this action is concerned, the defendants were under no obligation to perform. If the defendants persisted in the erection of bars, it was the duty of the plaintiff to submit to their erection, and resort to his action on the contract for the erection of gates, if one was made.

The important question in the case, and which really controls its final result, arises from other facts stated in the exceptions, and upon which the court were sufficiently requested, but neglected to charge the jury. The case finds that before any of the injuries complained of were committed, the agents of the defendants, while engaged in putting in bars at this crossing, were expressly forbidden so to do, by the plaintiff; and after the injury to the ox was committed, and before the cow was killed, the plaintiff again refused to have bars erected at the crossing; and it does not appear from the case, that these facts were contradicted by any evidence on the part of the plaintiff. To these facts the attention of the jury should have been directed, and if found true, the court should have instructed them, as a matter of law in the case, that if the plaintiff refused to have bars erected, and forbade the defendants to construct them at that place, the defendants were not chargeable with that negligence or misconduct, that will enable the plaintiff to

sustain his action for damages for these injuries. On the contrary, the plaintiff was in fault in permitting his cattle to run in that open and uninclosed field, knowing of their exposure to injuries of this character. It is not for him to complain of these injuries, when he has forbidden the defendants to do what they, by their charter, were permitted to do, to protect themselves from their liability for such injuries. To this effect the defendants requested the court to charge the jury, and the court neglected to do so; and for this neglect we think there was error.

Upon the question as to the form of action, we refrain from the expression of any opinion, as the case, upon the other points, must be remanded.

Judgment reversed, and the case remanded.