RAILWAY COMPANY *v.* TELFORD'S EXECUTORS.

(*Knoxville.* October 30, 1890.)

1. EMINENT DOMAIN. *Foundation and limit of the power.*

The power to take private property for public use depends upon, and is limited by, the necessities of the public. Hence the absolute fee in land, or its exclusive possession, will not be condemned for a public purpose where a mere easement in, or conjoint occupation of, the land will suffice to meet the necessities of the public.

2. SAME. *Construction of railway charter.*

Railway company constructed road over a tract of land, and operated it continuously for thirty years after completion. It did not condemn or pay for the land taken, and had no contract with the land-owner in reference to right of way. Its charter provided that in absence of any contract with the land-owner "it shall be presumed that the land upon which the said road may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to the company by the owner thereof, and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same as long as the same be used only for the purpose of said road, and no longer, unless the persons owning the said land at the time that part of the road which may be on said land was finished, or those claiming under him, her, or them, shall apply for an assessment for value of said land, as hereinbefore directed, within five years next after that part of said road was finished; and, in case the said owners, or those claiming under them, shall not apply for such assessment within five years next after said part was finished, they shall be forever barred from recovering the said land or having any assessment or compensation therefor."

*Held :* The railway company did not take the absolute fee or exclusive right to possession of the "space of one hundred feet on each side of the center" of its road, but only an easement therein commensurate with its legitimate necessities.

Act construed : Acts of 1847–48, Ch. —, Sec. 23.

Case cited and approved : 68 N. Y., 594.

3. SAME. *Same. Owner's possession not adverse.*

Subject to this easement of the railway company in the lands taken, the fee and right of possession remain with the owner; and therefore his possession of the land for agricultural purposes is not adverse to the company's rights, so long as the land is not required for railroad purposes, and there is no open assertion of any right hostile to or incompatible with the company's easement therein.

4. SAME. *Same. Right to put in side-track.*

Under the easement acquired by the railway company, it had the right to put in a necessary side-track upon the land taken within thirty yards of the main track thirty years after completion of its road; and the company's right to put in such side-track is not extinguished by the owner's possession of the land upon which it was located for thirty years for agricultural purposes.

Cases cited and approved: 22 Kan., 285 (S. C., 31 Am. Rep., 190); 104 Mass., 1 (S. C., 6 Am. Rep., 181).

5. SAME. *Same. Provision for compensation of land-owner constitutional and exclusive.*

The provisions for compensation of the land-owner contained in this charter are constitutional and exclusive.

Case cited: Sims *v.* Railroad, 12 Heis., 621.

---

### FROM WASHINGTON.

---

Appeal in error from Circuit Court of Washington County. A. J. BROWN, J.

W. M. BAXTER and KIRKPATRICK & WILLIAMS for Railway Company.

NEWTON HACKER for Telford's Executors.

LURTON, J.   Action for damages for land alleged to have been appropriated by plaintiff in error— the East Tennessee, Virginia and Georgia Railway Company—upon which to construct a siding parallel with main track.

The line of railway operated by appellant was constructed more than thirty years since over the lands of G. W. Telford, and has been continually operated.   Very recently the railway company have put in a side-track over the same land, and within thirty feet of the main track.   The executors of Telford, in whom is vested the legal title, bring this action as for an additional appropriation. The company defends upon the ground that this additional track has been put upon their own right of way.   No conveyance was ever made by Telford of any right of way, and no condemnation had.   The railway company claims a right of way of one hundred feet on each side of center of track under the provisions of Section 23 of their charter, which is in these words: "In the absence of any contract with the said company in relation to land through which the said road may pass, signed by the owner thereof, or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner, it shall be presumed that the land upon which the said road may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to the company by the owner thereof, and the said company shall

have good right and title thereto, and shall have, hold, and enjoy the same as long as the same be used only for the purpose of said road, and no longer, unless the persons owning the said land at the time that part of the road which may be on said land was finished, or those claiming under him, her, or them, shall apply for an assessment for the value of said land, as hereinbefore directed, within five years next after that part of said road was finished; and, in case the said owners, or those claiming under them, shall not apply for such assessment within five years next after the said part was finished, they shall be forever barred from recovering the said land or having any assessment or compensation therefor, etc." Act of January 27, 1848.

No action for an assessment of damages was ever brought by Telford, and there is no evidence that he was ever compensated. The constitutionality of this provision for the taking of private lands for a public use cannot be impugned. An ample remedy is given the owner to recover compensation, and this remedy is exclusive. This point has been expressly ruled in a case involving a similar charter. *Simms* v. *Railroad*, 12 Heis., 621.

Defendants in error insist that the land not actually occupied by the railway track and embankments has been continuously cultivated by Telford since the construction of the road, and that for fifteen years a part has been fenced in,

with his other lands, and that this has been under a claim of right and therefore adverse; and that this adverse holding has operated to defeat and extinguish any title or easement beyond that actually used by the company.

The railway company, on the other hand, contends that it only acquired an easement, and that the fee remained in the owner, and that the owner of the fee has the right, so long as an exclusive occupation of the right of way is unnecessary for the operation of the road, to make such use of the surface as is not inconsistent with the easement, and that the use for agricultural purposes was a use consistent with the rights of appellant, and, therefore, not adverse.

We are of opinion that the grant presumed to have been made by Telford was a grant, not of the fee, but of an easement. The doctrine of eminent domain rests upon the presumed necessity for the taking of private property for a public use. The taking, to· be consistent· with this theory, must therefore ordinarily be limited to the apparent necessities of the public. Statutes authorizing a taking of private lands for railway purposes generally limit the taking to an easement, leaving the fee in the owner. When the statute does not clearly authorize the condemnation of the fee the easement alone· should be condemned. This charter method of condemnation does not expressly condemn the fee, and we think the "grant" presumed and the "title" acquired is a

grant of an easement and the title to the easement, and nothing more. Cooley Con. Lim. (5th Ed.), 691; *Washington Cemetery Company* v. *Railway Company*, 68 N. Y., 594; Lewis' Em. Domain, Section 278.

The fee, under this construction, remained with the owner, the railway acquiring a mere easement. The rights of one having an easement in the lands of another are measured and defined by the purpose and character of the easement; and, from this, it follows that the owner of a fee subject to an easement, may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement. As said by Judge Cooley, in considering the rights of the owner of the fee, where an easement has been condemned for public uses, "if there can be any conjoint occupation of the owner and the public, the former should not be altogether excluded, but should be allowed to occupy, for his private purposes, to any extent not inconsistent with the public uses." Con. Lim., 691.

What was said on this subject by the Supreme Court of Kansas is so applicable, and so thoroughly states our view of the law, that we quote a paragraph: "An easement merely gives to a railroad company a right of way in the land— that is, the right to use the land for its purposes. This includes the right to employ the land taken for the purposes of constructing, maintaining, and operating a railroad thereon. Under this right,

the company has the free and perfect use of the surface of the land so far as is necessary for all its purposes, and the right to use ·as much above and below the surface as may be needed. This would include the right to tunnel the land, to cut embankments, to grade and make road-beds, to operate and maintain a railroad with one or more lines of track, with proper stations, depots, turnouts, and all other appurtenances of a railroad. The former proprietor of the soil still retains the fee of the land and his right to the land for every purpose not incompatible with the rights of the railroad company. Upon the discontinuance and abandonment of the right of way, the entire and exclusive property and right of enjoyment revest in the proprietor of the soil. After the condemnation and payment of damages, the soil and freehold belong to the owner of the land, subject to the easement ·or incumbrance, and such land-owner has the right to the use of the condemned property, provided such use does not interfere with the use of the property for railroad purposes. In some cases the right of the owner of the soil would practically not amount to any thing, because the purposes of a railroad company might require the use of all the land taken to such a degree as to forbid the owner from any benefit whatever. The paramount right is with the railroad company, and the land-owner can do nothing which will interfere with the safety of its road, appurtenances, trains, passengers, or work-

men." *Kansas Central Railroad Company* v. *Allen*, 22 Kan., 285 (S. C., 31 Am. Rep., 190); see also *Proprietors, etc.*, v. *N. & L. Railroad Company*, 104 Mass., 1 (S. C., 6 Am. Rep., 181).

The use by Telford of the condemned land alongside of the railway company for agricultural purposes, so long as same was not required for a purpose of convenience or necessity by the railroad company, was a use entirely consistent with his rights as the owner of the fee, and was not incompatible with the easement granted the railway. It was a use not made under a notice to the owners of the easement that its purpose was adverse to the easement, and it was not therefore adverse. The railway company had the right to terminate such use whenever they desired to put the land to a use incident to the operation of their railway, and, in constructing a track thereon, they did not appropriate any property belonging to defendants in error.

The judgment must be reversed, and the suit having been tried without a jury, we now render such judgment as should have been pronounced by the Circuit Judge. The suit will therefore be dismissed at the cost of the appellee.