[No. 3543. Decided March 30, 1901.]

NORTHERN COUNTIES INVESTMENT TRUST, LIMITED, *Appellant*, v. A. J. ENYARD *et al., Respondents.*

ADVERSE POSSESSION — OCCUPATION OF RIGHT OF WAY — WHEN CONSISTENT WITH EASEMENT.

Where a portion of the land granted to a railway for right of way purposes was, during its non-user by the railway, fenced and cultivated by the grantor of the easement and his successors for a period of more than ten years, no title by adverse possession inured to them, since the mere occupation of a portion of a right of way by the owner of the servient estate is not inconsistent with the easement, but must be construed as permissive, in the absence of acts upon his part actually tending to prevent the use of the right of way for railway purposes.

Appeal from Superior Court, Cowlitz County.—Hon. ABRAHAM L. MILLER, Judge. Affirmed.

*Ballou & Murdock,* for appellant.

*Crowley & Grosscup* and *A. G. Avery,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—In July, 1870, Angelica Gill received a final certificate of entry for certain lands in Cowlitz county, and on December 7th following she executed and delivered to the Northern Pacific Railroad Company her deed for a right of way for the construction of railroad and telegraph lines of two hundred feet of land on each side of the railroad as located and to be located across her premises. The deed contained the usual covenants of warranty, and was duly placed of record. The railroad company, in the latter part of the year 1871, located its line of road across the premises, and constructed and completed its road in 1872, and the railroad and its successor, the Northern Pacific Railway Company, respondent, have ever since continued to operate its railroad through said premises. On the 22d of March, 1873, Angelica Gill conveyed by deed of warranty the same premises to one Pumphrey, who, upon the delivery of the deed, entered into actual and open possession of the premises conveyed to him, and during such time continued in possession, cleared the land, and reduced it to a state of cultivation for farming purposes, and, upon entering into possession of the land, fenced and closed the same up to within twenty-five feet of the track of the railroad line, and his possession was peaceable and undisturbed for more than ten years. In May, 1890, Pumphrey executed a mortgage to the Lombard Investment Company, covenanting that he had a valid title in fee simple to the premises so mortgaged. The Lombard Investment Company as-

signed the mortgage, with the debts secured thereby, to appellant, and appellant foreclosed the mortgage, and became the purchaser of the mortgaged premises, and in November, 1897, received a deed from the sheriff for said premises.   The area in dispute consists of a strip of land 175 feet wide on each side of the line of the railroad company.   In the fall of 1896 the respondent railway company went into possession of the strip of land in dispute and leased it to the respondents Enyard and wife, who have been in possession of the premises as tenants since that time, using the land for ordinary farming purposes. Appellant, in August, 1898, commenced the action in ejectment against Enyard and wife to recover possession of the strip of land in controversy.   The railway company intervened as the landlord of Enyard and wife.   The principal facts were stipulated at the trial, in addition to which appellant introduced testimony relative to the possession, from which it appeared that Pumphrey, after the delivery of the deed from Gill to himself, cleared the strip of land in controversy; that in 1875 he put a rail fence along the land he occupied; and that he raised hay and grain and farmed generally.   The railroad line was in the same place as where it was originally located.   It also appeared that no objection to his occupancy of the strip was made by the railway company.   At the conclusion of the trial the court withdrew the cause from the consideration of the jury, and entered judgment for respondents, dismissing the cause.

Appellant relies for title upon adverse possession.   Counsel maintain that when the period of limitation has run a new title is created, and under such title the owner may maintain an action of ejectment to quiet title under general allegations of ownership.   A number of authorities are cited to sustain the principle, including *Raymond v.*

*Morrison,* 9 Wash. 156 (37 Pac. 318), and *Rogers v. Miller,* 13 Wash. 82 (42 Pac. 525, 52 Am. St. Rep. 20). The correctness of this position may be conceded. But this proposition is answered by respondents' contention that the possession of appellant was not adverse; it was permissive; that the mere occupancy of a portion of the right of way of a railroad company by the owner of the servient estate is not inconsistent with the easement. Some of the authorities cited by appellant are to the effect that "the right acquired by the corporation, though technically an easement, yet it requires for its enjoyment a use of the land permanent in its nature and practically exclusive." *Hazen v. Boston & Maine R. R.,* 2 Gray, 574; also, *Hurd v. Rutland & B. R. R. Co.,* 25 Vt. 116; *Jackson v. Rutland & B. R. R. Co.,* 25 Vt. 150 (60 Am. Dec. 246); *Kansas Central Ry. Co. v. Allen,* 22 Kan. 285; *Illinois Central R. R. Co. v. Godfrey,* 71 Ill. 500 (22 Am. Rep. 122).

It is true that the right of way of a railroad company for the operation of a line of railroad and telegraph lines has some of the attributes of ownership of the fee. The possession of the right of way when required for some of the uses of the company must be practically exclusive for those uses. But the right of way of the railway company here is designated in the act of congress of July 2, 1864, incorporating the Northern Pacific Railroad Company, as a right of way. The deed from Gill to the railroad company is designated a right of way. The grant in the deed was evidently of an easement. The dominant estate for such uses as were not inconsistent with the uses of the right of way and the fee still remained in the grantor. Washburn, Easements (4th ed.), *p. 291.

It seems to be the general rule that a right of way lying in grant is not lost by non-user. *Pope v. O'Hara,* 48

N. Y. 446.   It would seem, at any rate, to require some act upon the part of the owner of the servient estate which actually prevents the use of the right of way when required for the purposes of the railroad company, to give notice of adverse claim of right.   *Noll v. Dubuque, B. & M. R. R. Co.*, 32 Iowa, 66; *Slocumb v. Chicago, B. & Q. Ry. Co.*, 57 Iowa, 675 (11 N. W. 641).

Relative to the right of the railroad company to the entire width of four hundred feet for right of way, a full discussion is found in *Northern Pacific R. R. Co. v. Smith*, 171 U. S. 260 (18 Sup. Ct. 794), and also *New Mexico v. United States Trust Co.*, 172 U. S. 171 (19 Sup. Ct. 128).

In *East Tennessee, V. & G. Ry. Co. v. Telford's Exrs.*, 89 Tenn. 293 (14 S. W. 776), it was observed:

"The use by Telford of the condemned land alongside of the railway company for agricultural purposes, so long as the same was not required for a purpose of convenience or necessity by the railway company, was a use entirely consistent with his right as the owner of the fee, and was not incompatible with the easement granted the railway. It was a use not made under notice to the owners of the easement, that its purpose was adverse to the easement, and it was not therefore adverse.   The railway company had the right to terminate such use whenever they desired to put the land to a use incident to the operation of their railway.   .   .   ."

In *Union Pacific Ry. Co. v. Kindred*, 43 Kan. 134 (23 Pac. 112), it was held that the occupation, cultivation and inclosure, by abutting land owners, of the right of way granted by congress could not be considered as hostile or adverse, and must be regarded as permissive only.   We observe no distinction between the right of way granted by congress and the right of way granted by the appellant in this regard.   The uses for the right of way in

connection with the operation of the railroad may be many. It may require a use for additional stations or side tracks. The company must so use its right of way as to reasonably prevent the communication of fires in the operation of its engines. Many of these uses, it will be observed, need not necessarily be made by the company when its line is first constructed. They must all be regarded, however, as in contemplation of the grant of the right of way. The clearing, cultivation, and fencing of a portion of the right of way not in use at the time would not seem to be inconsistent with the continuing rights of the company. We do not think the acts of possession of appellant's grantors were such as to notify the company of an adverse claim to the strip of land in controversy. Such occupancy and use by appellant may be regarded as permissive. We think upon this ground alone appellant has failed to show sufficient title to maintain its action.

Arriving at this conclusion it is not necessary to discuss some other important objections argued by counsel for respondents.

The judgment is affirmed.

DUNBAR, FULLERTON and ANDERS, JJ., concur.