ROBERT E. ROBERTS, APPELLANT, V. SIOUX CITY & PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

FILED JANUARY 5, 1905. No. 13,037.

1. **Eminent Domain: RECORD: PRESUMPTION.** When, after the lapse of 30 years or more, the record of proceedings in the exercise of the power of eminent domain is shown to be such that they would have been valid under any circumstances, and where both parties have treated them as valid, such circumstances will, if necessary, and in the absence of evidence to the contrary, be presumed to have existed.

2. **Railroads: EASEMENT: ADVERSE POSSESSION.** The use for agricultural purposes, such as grazing and cultivation by adjoining landowners of otherwise unused and unfenced parts of the right

of way of a railroad company, is not inconsistent with or adverse to the enjoyment of the easement.

3. **Adverse Possession:** NOTICE. Occupancy, by an individual, of parts of the right of way of a railroad company obtained by condemnation proceedings, with elevators, granaries, coal sheds and similar structures, used in carrying on his business, and by the company, as a common carrier, for convenience in handling his shipments, will not be treated as adverse or under claim of title, unless actual notice of such claim is brought home to the company, or his conduct is such as will as a matter of law constitute such notice.

4. ———: ———. In the absence of such notice or conduct, the erection and maintenance of such buildings without express agreement therefor will be regarded as being with the permission, consent or license of the company, and subject to its right to resume possession of the ground whenever necessity requires its use for railroad purposes.

5. ———. The question whether in any case a railroad company can be deprived of its right of way by adverse possession is not involved in this case, and for that reason is not decided.

APPEAL from the district court for Washington county: WILLIAM W. KEYSOR, JUDGE. *Reversed: Decree entered.*

*James W. Carr,* for appellant.

*B. T. White* and *James B. Sheean, contra.*

BARNES, J.

The appellant, as plaintiff, commenced this action in the district court for Washington county to obtain a decree quieting the title in himself to a strip of land 50 feet in width lying along and adjacent to another strip 100 feet in width, occupied by one of the defendants, appellee herein, for the operation of its railroad. The trial resulted in a decree quieting the title in the plaintiff to a small part of the land in controversy, on which he had erected an elevator, and a judgment in favor of the defendant as to the rest of the premises. The case comes here by appeal; and the railroad company claims both strips of land are in-

cluded in its right of way acquired by the exercise of the power of eminent domain in the year 1868; while appellant denies such acquisition because of certain alleged defects in the condemnation proceedings, and contends that by reason of such defects the court acquired no jurisdiction, and that such proceedings were void. The trial court sustained the contention of the railroad company so far as the condemnation proceedings are concerned, and as his opinion on that question fully accords with our views, and has our approval, we adopt that part of it as our own:

"Defendants claim a right of way through plaintiff's land 100 feet wide on each side of the center line of their track, and are threatening to take possession thereof to its full width. Plaintiff admits that they have a right of way 50 feet wide on each side of the center line of their track, and brings this action for the purpose of enjoining them from excluding him from either of the strips of land which lie between the 50 feet and the 100-feet limits." * * * It appears that "prior to and at the time of the building of the Sioux City & Pacific Railroad through Washington county, plaintiff was in possession of three contiguous quarter sections of land adjacent to the village of Arlington, and extending east therefrom. The first, being the northwest quarter of section 18, township 17, range 10, he occupied as the tenant of one Thomas Beatty; the second, being the northeast quarter of said section, he owned and resided upon, which for the sake of convenience will be hereinafter referred to as the homestead; and the third, being the northwest quarter of section 17, in said township and range, he held possession of under a privilege of cutting hay thereon.

"July 19, 1868, the aforesaid railroad company filed an application in the county court of said county for the appointment of commissioners for the condemnation of a right of way across said quarter sections of land 100 feet on each side of the center line of its tracks. Commissioners were accordingly appointed, and they reported to

said court that the plaintiff was damaged in the sum of $150 for the right of way, as prayed for, through his homestead quarter. From this award he appealed to the district court; but he subsequently settled with the company for $500, dismissed his appeal, and delivered to the company a deed which conveyed to it an easement of 200 feet wide across said homestead. Plaintiff now alleges that defendants obtained no right of way by virtue of said proceedings because they were in many respects irregular and void. But, if said condemnation proceedings were irregular or even void, plaintiff estopped himself from making such a plea when he dismissed his appeal and accepted the $500 from the railroad company. *Kile v. Town of Yellowhead,* 80 Ill. 208; *Hartshorn v. Potroff,* 89 Ill. 509; *Burns v. Milwaukee & M. R. Co.,* 9 Wis. 420; *Hitchcock v. Danbury & N. R. Co.,* 25 Conn. 515; *Trester v. Missouri P. R. Co.,* 33 Neb. 171. At all events, plaintiff's right of way deed closes his mouth as to the existence of a 200-feet right of way across his homestead. It is true, however, that he alleges that said deed was altered subsequently to delivery thereof by a change of the word 50 to 100, thereby making the right of way 200 feet instead of 100 feet wide. But we are compelled, by a preponderance of the evidence, to find that he was mistaken. The recital in the deed that said alteration was made before the execution of the deed; the appearance of the ink, the similarity of the penmanship of said alleged alterations with the handwriting of the body of the instrument, and J. A. Unthank's testimony, all convince the court that plaintiff has forgotten the circumstances attending the execution of the deed and about the alteration, and that he must have known at the time that he was making a conveyance of 200-feet easement to the company. Moreover, the condemnation proceedings, of which he certainly had knowledge, related to a 200-feet right of way, and so did the release which he gave to the company for damages. The conclusion is irresistible that the plaintiff knew that the railroad company was attempting to procure a 200-feet right of way, not only

through his homestead, but also through the other two quarter sections of land; indeed, he so testified; and, that as to said homestead he is now estopped by his deed to claim otherwise.

"That the company obtained a 200-feet right of way through the other two quarter sections of land is not so clear. In *Trester v. Missouri P. R. Co.*, 33 Neb. 171, it was held that a petition for the appointment of freeholders to assess damages should state, among other things, the names of the landowners, if known, a description of the land over which the railroad is located, the width required for right of way purposes, and that the landowner refuses to grant a right of way through his premises. The petition filed in the condemnation proceedings in question did not state the names of the owners of the lands over which the railroad had been located, or recite that the owners were unknown, or allege that they had refused to grant a right of way over their premises. Plaintiff contends that these omissions render the petition jurisdictionally defective, and that therefore all of the proceedings based thereon are void. While the petition does not allege that the owners of said two quarter sections of land were unknown, the proceeding was evidently begun by the company and heard by the court on that assumption. The published notice described them as unknown owners, and that is sufficient proof of the fact, which has passed unchallenged for 34 years. If the names of the owners were unknown, it is manifest that they could not have been inserted in the petition, and that the rule laid down by the case of *Trester v. Missouri P. R. Co.*, *supra,* was not intended to be applicable to such a case as this. An allegation that the names of the owners of the lands were unknown was a proper one, and it ought to have been put into the petition, but its omission was not fatal to the jurisdiction of the county court. So, too, the omission of an allegation that the owners had refused to grant a right of way over their premises is immaterial; for, after a studious consideration of the statutes, and for what

seems to be the better reasoning, and in the absence, too, of authorities to the contrary, we are of the opinion that in cases of nonresidents it is not essential to the jurisdiction of the county court that a railroad company should allege in its application for the appointment of commissioners that it had first tried to obtain a right of way by agreement with the owners of the lands over which its railroad was located. Under this view of the law the application aforesaid was sufficient to give the county court jurisdiction as to the other two quarter sections of land, whose owners the evidence shows were then nonresidents.

"The notice served on nonresidents by publication was published in a newspaper in Douglas county, and it was a legal notice, if there were no newspaper then being published in Washington county. Plaintiff claims that the burden of showing that there was no newspaper published in Washington county at that time rests upon the defendants, because they must prove a valid condemnation proceeding. The fact that the notice was published in another county, that the county court acted on said notice, and that said notice has passed unchallenged for nearly 35 years makes a *prima facie* case in defendant's favor as to this issue, and in the absence of testimony to the contrary warrants the court in holding that said notice was properly published, and is valid.

"Plaintiff also alleges that said condemnation proceedings were invalid because of want of proof of payment of the damages awarded. He admits that he received $500 for a right of way through his homestead. J. A. Unthank testifies that he received from the county court, for his nephew, the damages which were awarded for a right of way over the northwest quarter of section 18; and even if there be no evidence of his authority to receive said damages, his testimony nevertheless proves that they were paid into the county court. The county court record has the word 'paid' written on the margin of the page opposite the descriptions, northwest quarter of section 17, and northwest quarter of section 18. This word standing be-

fore the description, northwest quarter of section 17, is verified by Mr. Unthank's testimony; and if it is properly before the northwest quarter of section 17, on which the damages were paid, then it is reasonable to believe that it would not have been written opposite the northwest quarter of section 18 unless the damages had been paid on that quarter also. There is no apparent reason why the railroad company should have paid in the damages on one quarter section and not on the other, nor why the county court should have written the word 'paid' rightly before one description and wrongly before the other."

In *Livingston v. Arnoux*, 56 N. Y. 507, it was held that an official memorandum made by an officer against his interest is evidence as well of the fact against his interest, as of the other matters contained in it. "The evidence shows that the damages were paid into the county court, and it is reasonable to infer that the owners of the lands received the money. It is at all events very unlikely that plaintiff, who was then occupying the land as an agent and who had full knowledge of the condemnation proceedings, did not inform his principals of the seizure of a right of way over their land, and that they did not thereafer demand and receive the damages due them."

We are therefore of the opinion, and so find, that the Sioux City & Pacific Railroad Company did, by valid condemnation proceedings, obtain a right of way 200 feet wide over the aforesaid three quarter sections of land. The right thus obtained was only an easement under which the railroad company was entitled to use the land thus condemned as a highway for the purpose of operating its road, but the fee remained in the holders of the legal title, who were the owners of the servient estate.

The appellant further contends that he has obtained title to the strip of land in controversy, or at least a part of it, by reason of his alleged open, notorious, exclusive, continuous and uninterrupted adverse possession thereof under a claim of title for more than the statutory period of limitation. This requires an examination of the evi-

dence, and a finding on that question. It appears from the record that, except as to that part of the north 50-feet strip which lies west of the defendant's section house, the plaintiff's use of the disputed part of defendant's right of way was for agricultural purposes. The evidence contained in the bill of exceptions shows that the plaintiff cultivated a part of the right of way situated outside of the railroad fences, cut grass thereon, in fact, farmed the same up to said fences. Such use was permissive only, and not at all inconsistent with the defendant's use of its easement. Plaintiff being the holder of the legal title had a right to cut the grass and timber, and to cultivate the right of way outside of the railroad company's fences so long as the company did not need the grass and timber for the maintenance of its track, and such cultivation did not interfere with the proper and safe running of its trains. We fail to see anything in either the plaintiff's claim to the grass and timber, or his cultivation of the right of way which was outside of the defendant's fences, which would indicate that such use was other than permissive. It is true that appellant Roberts erected fences for calf pastures and hog lots, but the use of the right of way for such purposes was not less permissive and consistent with the company's rights than was his cropping of the ground within the 200-feet strip. It appears that payment was made to the plaintiff of $100 by Mr. Hall, the defendant's agent, for permission to remove earth from said disputed land, and for a waiver of damages therefor; and it is claimed that such payment was a recognition of the plaintiff's claim of title; but it is doubtful whether that act of the company, which appears to have been done in ignorance of its rights or in forgetfulness of the true width of its easement, should be held sufficient to take from it a large tract of land which the state has permitted it to acquire and hold for the purpose of a public highway. If, as was held by the supreme court of Maryland, a railroad company cannot grant an easement across its right of way, it certainly cannot lose its

right of way by unnecessarily paying out money for some of the earth thereof. *Sapp v. Northern C. R. Co.,* 51 Md. 115. Again, the plaintiff's possession of a large part of the 50-feet strip in question, north of the defendant's track, was not exclusive, for the public used said strip at least to the width of an ordinary wagon track as a public road, and the same may be said of that ground which was used by the company for the storing of ties. In order to obtain title by adverse possession, the plaintiff's use of the portion of the railroad company's right of way in question must not have been permissive, but must have been of such a character as to thereby apprise the railroad company that the possession was intended to be adverse and hostile to its easement. The great weight of authority is that fencing and cultivating a right of way, cutting the grass and timber thereon and using the land for pasturage are not evidence of an adverse holding, because the owner of the fee has the right to do these things so long as they do not interfere with the operation of trains. They are in themselves no notice to the company that its right to use its right of way to its full width, when needed, will be contested or denied. The supreme court of Iowa, in *Slocumb v. Chicago, B. & Q. R. Co.,* 57 Ia. 675 (a case very much like the one at bar), said: "Plaintiff's possession was not adverse to, nor inconsistent with, the right of defendant to occupy the whole right of way, whenever it became necessary or desirable for it to do so." The use of the plaintiff of the condemned lands along side of the railroad for agricultural purposes, so long as the same was not required for the purpose of convenience or necessity by the railroad company, was a use entirely consistent with his right as the owner of the fee, and was not incompatible with the easement granted to the railroad company. *East T. V. & G. R. Co. v. Telford's Executors,* 89 Tenn. 293; *Mobile & O. R. Co. v. Donovan,* 104 Tenn. 465, 58 S. W. 309. In *Northern Counties Investment Trust Co. v. Enyard,* 24 Wash. 366, 64 Pac. 516, the court held that fencing and cultivating land for over ten years, which is sub-

ject to a right of way, is not adverse but permissive, since it is not inconsistent with such right of way.

We are therefore of the opinion that the law is, and as a matter of right and logical reason ought to be, that no part of a railroad company's right of way which has been validly procured and paid for, and over which it is running its trains daily, can be lost to it by the use thereof of the owner of the adjoining land, which is permissive or consistent with the company's use of its tracks, such as cultivating, pasturing, mowing, or cutting the timber thereof. In this state, where thousands of fertile acres of railroad rights of way can be profitably cultivated by adjoining landowners without detriment to the railroads, the court ought not to deprive the state and the landowners of such sources of profit by adopting a rule which will compel the railroad companies to fence their rights of way to their full width in order to save their easements.

Plaintiff has called the court's attention to that section of the statute which relates to fencing railroads, and has argued inferentially, at least, that a railroad company loses its right of way by failing to fence it. This statute requires the fencing of a right of way for the protection of live stock, and it does not provide that a failure to fence shall in any respect affect its right to its easement or determine the width thereof. The use of its track by a railroad company is an assertion of its right to the full width of its right of way; and it is immaterial where it places its fences for the exclusion of stock from its track. The location of such fences is not in itself conclusive evidence of abandonment of any part of the right of way which may be outside thereof. The statute is a police regulation, and the only penalty for its violation is an action for negligence.

It is said that there is no evidence that the 50-feet strips of right of way in dispute are necessary for the operation of defendant's railroad, and therefore the plaintiff claims that he ought at all events to be awarded the injunction prayed for. The statute provides that a railroad company

may acquire for right of way purposes so much land as may be necessary therefor, not exceeding 200 feet in width. Whether the amount asked for in a condemnation proceeding is necessary or not must be determined in such proceeding; and the condemnation of a certain width for a right of way is an adjudication that said width is necessary.

The case of *Northern P. R. Co. v. Smith,* 171 U. S. 260, was an ejectment suit against the company to recover a portion of its right of way. The trial court found that the company claimed a 400-feet right of way under a grant by congress; that the company had actually used only 25 feet thereof; that the remaining part was not necessary for the operation of the road, and that the plaintiff should recover. The supreme court of the United States reversed the case, holding that a grant of a 400-feet right of way was conclusive that such an amount was necessary, and that a showing of the amount actually used was immaterial. The case is also an authority that ejectment will not lie against a right of way obtained with the knowledge of the owner of the fee. Under this decision the plaintiff herein could not recover the land in question by ejectment, and it is therefore doubtful about his right to an injunction to prevent the company taking its own.

The most logical rule is that announced in *Hurd v. Rutland & B. R. Co.,* 25 Vt. 116, in which the supreme court of that state held that those from whom land has been taken for a right of way retain no unquestionable right to its use for pasturage or otherwise, and that the right of the railroad company to the use and possession of its right of way is absolute during the existence of the easement.

*Dietrichs v. Lincoln & N. R. Co.,* 13 Neb. 361, is a decision to the effect that the judgment of a railroad manager that a certain tract of land ought to be condemned for railroad purposes is *prima facie* evidence that said land is necessary for the operation of the road. If this be so, then the judgment of the defendant, as indicated by the

threat alleged that it ought to take possession of its right of way to its full width, ought to be at least *prima facie* evidence of the necessity of such taking, and casts upon the plaintiff the burden of proving that the company does not need the land in controversy; and the cases of *Forney v. Fremont, E. & M. V. R. Co.*, 23 Neb. 465, and *Chicago, B. & Q. R. Co. v. Hull*, 24 Neb. 740, decide nothing contrary to this rule. It cannot be the law that even a railroad company must prove that it needs its property in order to recover possession of it. If plaintiff believed that defendant did not need a 200-feet right of way through his homestead, he should have raised that issue in the condemnation proceeding. He did not do so, and we do not perceive how he can do so now, either justly or lawfully, without at least tendering back to the company a proper part of the $500 which he received as compensation for the 200-feet easement.

We come now to consider the rights of the parties as to that part of the 50-feet strip in question occupied by the plaintiff's elevator, comprising 1,960 square feet. The testimony establishes that from the west line of section 18, running north and south, which is the east line of the village of Arlington, and extending east along the railroad of the defendant's 335 feet to the fence inclosing the section house referred to in the record, is a strip of ground 50 feet wide. Upon a part of, and near the west end of, this strip the plaintiff, in the year 1880, erected a granary extending east 100 feet and adjacent to the right of way of the defendant, measuring 50 feet from the center of its track, north. He maintained said granary at that point until the year 1882, in connection with an elevator which he had erected upon the ground which he leased of the defendant on its 50-feet right of way, at which time he removed the granary referred to across the road to the north, and erected upon the former site of said granary a grist-mill, at which time the defendant, the Sioux City & Pacific Railroad Company, at the request of the plaintiff, constructed a spur track from its main line to the plain-

tiff's mill for his accommodation in the shipment of the products of the mill. The spur track was constructed from near the section house over the 50-feet right of way on the north of the main tracks of the railroad toward the west, parallel with the side track to a point a short distance west and south of the mill. Sometime during the spring of the year 1885, the elevator which plaintiff was maintaining upon the ground which he leased of the defendant southwest of the mill, together with the mill, was burned to the ground, and the plaintiff discontinued the use of the leased ground. Plaintiff immediately began the construction of an elevator upon the site of the mill which was burned and which had been formerly occupied by the granaries referred to, also some coal houses which extended for some distance to the east thereof, being something near 100 feet in length, east of the elevator. From that point to the west line of the fence inclosing the section house, plaintiff occupied the ground with his lumber yard and for a stone yard until the year 1898, when he tore down a portion of the coal house and erected, or permitted to be erected, another elevator which is occupied by his lessee, who is a son of the plaintiff, and which they continued to occupy and use until the commencement of this suit. At the place where this elevator is standing the tracks of the company have never been fenced by it, but appellant Roberts has maintained a fence inclosing his own land upon a line running 100 feet north of the track, that is, along the northern boundary of the right of way as claimed by the company. The controverted strip lying between this boundary and a line running parallel with and 50 feet from the track has, with the exception of that part of it actually occupied by the above mentioned structures of appellant, continuously, since the building of the road, been in use by the company for a section house yard, for a spur track, and as dumping and storage ground for ties, rails and like material; and by the permissive use of a part of it by the public for a road. During the same time the company have burned fire guards and cut the

grass growing upon the ground in like manner as with other parts of its right of way. The now existing elevator was built in 1900, in the face of protest and disputed right, so that there are no equitable considerations of estoppel or other kind to obscure legal principles or restrain their application.

It seems, then, that the strip lying 50 feet north of the unfenced portion of the company's track, if regarded as a whole, was used in common by the appellant and the company and by the public for highway purposes. We think this fact has an important bearing upon the question whether appellant had open, notorious and exclusive possession under claim of title to the grounds occupied by his buildings. That the company was ever actually notified that he made such a claim, or regarded his possession as so characterized, until about the time of the building of the new elevator is not asserted, and the first building he erected on the right of way, on a site adjoining the land in dispute, was built under a lease from the company. Elevators, granaries, cribs, coal sheds and similar structures are in the nature of warehouses, and serve as adjuncts and accessories to the carrying on of the trade and transportation which are the principal objects for which railroad companies are created. As in the case of passenger stations and depot buildings, it is within the charter powers of the companies to erect and maintain them themselves, or they may permit them to be built by other corporations or by individuals upon their rights of way, and in either case they serve the same purpose. But in the nature of things, at least in the absence of agreement or evidence to the contrary, such occupancy must be regarded as permissive and subject to be terminated at any time when the company shall require the grounds for the erection of such structures by itself, or for occupancy by side tracks and sidings; otherwise the utmost vigilance might be required of railroad corporations to preserve the beneficial and necessary use of their rights of way for their own purposes from being destroyed or taken away from them by "squat-

ters" and adverse claimants.  Manifestly, as it seems to us, such a situation would be contrary to public policy.

Again, as we have stated above, a railroad company acquiring its right of way by condemnation proceedings under the constitution and laws of this state does not obtain a fee title thereto.  It secures merely an easement in the right of way which authorizes it to build and operate its railroad as a public highway.  The fee title and servient estate remains in the original owner, and may be sold and conveyed by him to another.  In the very nature of things the railroad company cannot dispose of, alienate or even lease its easement for any purpose except for the operation of a railroad; and whenever the right of way is abandoned for that purpose, it reverts at once to the owner of the servient estate.  Such was the right obtained by the railroad company to the land in controversy in this case. Therefore it is not manifest to us how title or right to this easement of the company can be obtained by a third person by adverse possession.  It follows, as a logical consequence, that persons erecting structures, such as the ones above described, upon railway rights of way, do so with the knowledge of existing conditions, and their occupancy will be presumed to be permissive only and by the express or tacit license of the company at least, until the latter shall be distinctly notified that the occupiers are claiming a superior right.  This conclusion renders it unnecessary to decide whether in any case a railroad company can be deprived of its right of way by adverse possession.  The railroad company filed a cross-bill in the district court praying for a dismissal of the plaintiff's petition, and for a decree quieting title to its right of way over all the lands in controversy.  The trial court granted the prayer except as to the elevator and site, and the right of ingress and egress thereto, adjudging the latter to be in the plaintiff. We are of the opinion that the district court was wrong in granting the plaintiff such relief, and for that reason the decree of that court must be reversed.

We find that the plaintiff has failed to show any ground

for relief; that his petition should be dismissed, and that the prayer of the defendant's cross-bill should be granted to the extent that its easement be quieted in and to the whole of its right of way in question. It is therefore ordered that the decree of the district court be reversed, and a judgment entered in this court in accordance with this opinion.

JUDGMENT ACCORDINGLY.

HOLCOMB, C. J., dissenting.

I am unable to concur in that part of the majority opinion reflected in the third and fourth paragraphs of the syllabus. As I view the law and the evidence as disclosed by the record, the judgment of the trial court should be affirmed in its entirety. The majority opinion, as it seems to me, leads logically to the conclusion that no title can be acquired by adverse possession of any part of a railroad company's right of way except upon actual notice of the adverse claim of title which is in fact brought home to the company holding such right of way. This engrafts on the law of adverse possession an exception to the general rule for which I can perceive no sound reason nor authority in precedent. The learned trial court hearing the case filed therein a written opinion in which the authorities are reviewed, and the reasons for the conclusions reached are ably and clearly stated. In order to make myself the better understood, I desire to quote from portions of this opinion, even though in so doing I may, in a measure, repeat what is said in the majority opinion. It is to be borne in mind that the plaintiff claims by adverse possession a portion of the defendant's right of way because of his having occupied and used it for agricultural purposes, and to another portion because of his having erected and occupied a mill, elevators and coal houses for purposes for which such structures are generally used. The defendant railroad company claims a right of way of 200 feet in width, that is, 100 feet each way from the center of its main tracks. The inner 50-feet strip is in nowise in

controversy. It is the outer strip of 50 feet to which the plaintiff lays claim by virtue of his alleged adverse possession.

1. The interest of the railroad company in and to its right of way arising by virtue of condemnation proceedings and a right of way deed executed for value seems to be in the nature of an easement rather than a qualified or absolute fee title, and, because of the character of its ownership of its right of way, it is sought in the argument to draw a distinction as to the acquisition of title by adverse possession of an easement, such as exists in the case, and of real estate used for right of way purposes when the title is held unqualifiedly. I am of the opinion that there are no substantial grounds for a distinction. It may be the fact of the nature of the interest of the company enjoying the benefit of the right of way may have a legitimate bearing in determining the question of whether the possession of the adverse claimant was hostile and inconsistent with the possession for right of way purposes, or permissive only; otherwise, I think the same rules should apply to all. In this connection, the trial court in its opinion says:

"The railroad company obtained an easement in said 200-feet strip of land, but the fee thereof remained in the holders of the legal title. While counsel spoke of the plaintiff's obtaining title by adverse possession, they doubtless meant merely that he had by such possession cut off defendant's right to the enjoyment of that part of the easement in controversy. * * * This proposition of law seems unimportant, however, for, if it be conceded that a portion of a right of way which a railroad company holds in fee can be lost by adverse possession, then, a right of way easement may be lost in the same way. * * * Indeed, there seems to be no sound reason for the rule that a right of way held as an easement cannot be lost by adverse possession, and that one held in fee can be. The arguments pro and con for one of these propositions are quite as pertinent to the other."

The courts generally, where it is held an adverse title may be acquired, regard the right, whether it be merely an easement or an absolute fee title, as being subject to loss of such right or title by adverse possession under rules equally applicable to both estates. This court has said that an easement in real estate may be acquired by open, notorious, peaceable, uninterrupted, adverse possession for the statutory period of ten years, *Omaha & R. V. R. Co. v. Rickards,* 38 Neb. 847; and that it may likewise be lost is hardly open to doubt. In Washburn, Easements and Servitudes (4th ed.), 717, it is said: "In the first place, if the easement has been acquired by deed, no length of time of mere nonuser will operate to impair or defeat the right. Nothing short of a use by the owner of the premises over which it was granted, which is adverse to the enjoyment of such easement by the owner thereof, for the space of time long enough to create a prescriptive right, will destroy the right granted." Speaking of the right of way of a railroad company, the supreme court of Massachusetts say: "The right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land, permanent in its nature, and practically exclusive." *Hazen v. Boston & M. R. Co.,* 2 Gray (Mass.), 574. Or as is said by the Vermont supreme court: "If that interest is regarded as a mere servitude or easement, the land nevertheless becomes so far the property of the corporation that their right is exclusive in its use and possession during its existence, as much so as that of the owner or occupant of the adjoining land." *Hurd v. Railroad Company,* 25 Vt. 116. See, also, *Illinois C. R. Co. v. O'Connor,* 154 Ill. 550; *Illinois C. R. Co. v. Wakefield,* 173 Ill. 564; *Donahue v. Illinois C. R. Co.,* 165 Ill. 640.

In those states where the right of way of a railroad company may be lost by adverse possession, the general rule is that it makes no difference whether the railroad company has merely an easement, or has a qualified fee, or an absolute fee simple title. *Nashville, C. & St. L. R. Co. v.*

*Hammond,* 104 Ala. 191, 15 So. 935; *Matthews v. Lake S. & M. S. R. Co.,* 110 Mich. 170; *Pittsburg, C., C. & St. L. R. Co. v. Stickley,* 155 Ind. 312; *Donahue v. Illinois C. R. Co., supra; Turner v. Fitchburg R. Co.,* 145 Mass. 433; *Northern P. R. Co. v. Ely,* 25 Wash. 384, 54 L. R. A. 526.

2. In respect of the claims of the plaintiff that he had acquired by adverse possession the railroad company's interest in the outer 50-feet strip of its right of way because of his possession and use of the land for agricultural purposes, the trial court in its opinion observes:

"That is to say, the possession of a portion of a railroad right of way must not be permissive, but must be of such a character as to thereby apprise the railroad company that the possession is intended to be and is adverse and hostile to its easement. While a few of the authorities, notably those from Illinois, hold that fencing in and cultivating a right of way or a portion thereof constitutes adverse possession, the great weight of authority is that fencing and cultivating a right of way, cutting grass and timber thereon, and using the land for pasturage, are not evidence of an adverse holding, because the owner of the fee has the right to do these things so long as they do not interfere with the operation of trains. They are in themselves no notice to the company that its right to use its right of way to its full width, when needed, will be contested or denied. The erection, however, on the right of way of a mill or an elevator or any other kind of improvements which become a part of the land, and which are inconsistent with the right of the company to take possession of the right of way to its full width at any time, has been held to be sufficient evidence of adverse possession to destroy the company's easement in the land so occupied."

It seems to me that this statement of the law is fully as favorable to the defendant railroad company as is justified by the authorities and sound reasoning, and I am unwilling to go further or to the extent to which the rule is carried in the majority opinion. To support the

conclusion of the trial court as to the extinguishment of
the right of way easement, or the acquisition of title by
adverse possession to the outer 50-feet strip occupied by
the plaintiff and used for purposes of agriculture, the
trial court, among many cases, cites *Slocumb v. Chicago,
B. & Q. R. Co.,* 57 Ia. 675, wherein it is said: "In *Barlow
v. Chicago, R. I. & P. R. Co.,* 29 Ia. 276, a right of way was
conveyed by deed to the Missouri & M. R. Co., in 1853,
which the Chicago, R. I. & P. R. Co. acquired in 1866, and
then constructed its road. It was held upon demurrer to
the answer that the right of way was not affected by non-
user, and that the statute of limitation did not bar the
defendant's right, notwithstanding the fact that the answer
alleged that the lands over which the right of way was
claimed, during this whole period of thirteen years, had
been fenced and used for agricultural purposes. This case,
it seems to us, is decisive, that the defendant's right to the
twenty-one feet in question is not barred by the possession
of the plaintiff. The plaintiff's possession was not ad-
verse to, nor inconsistent with, the right of defendant to
occupy the whole right of way, whenever it became neces-
sary or desirable for it to do so."

Also the *Northern Counties Investment Trust Co. v.
Enyard,* 24 Wash. 366, 64 Pac. 516, wherein the court say:

"The uses for the right of way in connection with the
operation of the railroad may be many. It may require a
use for additional stations or side tracks. The company
must so use its right of way as to reasonably prevent the
communication of fires in the operation of its engines.
Many of these uses, it will be observed, need not neces-
sarily be made by the company when its line is first con-
structed. They must all be regarded, however, as in con-
templation of the grant of the right of way. The clearing,
cultivation, and fencing of a portion of the right of way
not in use at the time would not seem to be inconsistent
with the continuing rights of the company. We do not
think the acts of possession of appellant's grantors were
such as to notify the company of an adverse claim to the

strip of land in controversy. Such occupancy and use by appellant may be regarded as permissive."

I think these authorities, among the many conflicting cases, announced the sounder and better rule, and, so believing, my views accord with those expressed by the learned trial judge in the opinion from which I have liberally quoted.

After discussing the authorities and the issues of law involved in the action, the questions of fact arising from the evidence in the case were disposed of by the trial court in the following manner:

"Except as to that part of the north 50-feet strip which lies west of the section house, the evidence clearly proves that plaintiff's use of said disputed part of defendant's right of way was permissive only, and not at all inconsistent with defendant's use of its easement. Plaintiff being the holder of the legal title had a right to cut the grass and timber and to cultivate the right of way outside of the company's fence, so long as the company did not need the grass and timber for the maintenance of its track and said cultivation did not interfere with the proper and safe running of its trains; and the court fails to see anything in either plaintiff's claim to said grass and timber, or his cultivation of said right of way, that was, under the greater weight of the authorities, any notice to the defendant that he would ever dispute its title to its easement, or any part thereof. It is true that he erected fences for calf pastures and hog lots; but the use of the right of way for such purposes was no less permissive and consistent with the company's rights than was his cropping of the ground within the 200-feet strip."

3. With reference to that portion of the right of way in controversy occupied by the elevator and other structures adjacent thereto, the trial court found that the adverse possession of the defendant had ripened into a perfect title. It is said:

"The testimony establishes that the elevator occupies 1,960 square feet. As to this land and enough more if

necessary to provide proper and needed approaches to the elevator the prayer of the petition must be granted. It seems to me that the Kansas and California cases lay down the more logical and the sounder rule; but the weight of authority sustains the plaintiff as to the ground on which the elevator stands. In order to obtain a hostile possession of any part of said right of way it was necessary to give the company notice of an intent to do so. There is no evidence that plaintiff ever gave the defendant any actual notice that he was holding any part of the right of way adversely. * * * But the erection of an elevator was such an appropriation of the land and was an improvement of such a permanent nature that the railroad company was thereby charged with notice that said possession was hostile. While it may be true that railroad companies foster business and encourage trade by permitting the erection of mills and elevators on their rights of way, a donation of lands for that purpose ought to be presumed where no objection is made to the erection of such structures and they have been allowed to stand ten years or more."

It seems to me there can be no question but that the erection by the plaintiff of the buildings of which mention has been made was a positive and unqualified assertion of claim of title adverse to the railroad company, and that the possession was so open, notorious, continuous, exclusive and hostile in character as to charge the plaintiff as a matter of law with notice of the adverse claim. It is, in my judgment, erroneous to say that these buildings were adjuncts of the railroad property, or that the plaintiff's business as conducted was carried on in conjunction with that of the railroad company. The plaintiff's business was purely private and conducted for his own benefit and profit. It is true that his business was facilitated by having his structures on or adjacent to the railroad right of way and close by the spur track constructed by the company along the outer edge of the inner 50-feet strip of land. These facts, however, do not render the structures

erected by the plaintiff adjuncts to the railroad, or the business conducted as being carried on in conjunction with that of the railroad company. It is to be noted that the plaintiff first had an elevator on the inner 50-feet strip and upon land he leased of the railroad company; later on, however, he erected his mill just outside of the inner 50-feet strip, took possession of and used it as his own, and in the conduct of a business exclusively pertaining to his private affairs. The mill was obviously of such a character as to become a part of the realty. It was a permanent structure. It was not erected to be removed at pleasure. Its erection and operation by the plaintiff was notice to all the world, and to the defendant company especially, that the plaintiff claimed the property as his own, and was using and exercising dominion over it as such owner. The same may be said of the elevator erected on the mill site after its destruction by fire, and of the other elevator later on erected to the east of the first one, and of the coal sheds constructed between the two. These structures were all on the outer 50-feet strip and immediately adjacent to the outer line marking the boundary of the inner 50-feet strip. I can scarcely conceive of an adverse holding of real estate that would be more open, notorious and hostile to the holder of the paper title than was the possession of the plaintiff in the case at bar in so far as it relates to that portion of the right of way on which he had constructed his mill, elevators, coal houses, etc. Nor can I appreciate the necessity of actual notice of an intention to claim adversely in a case like the one under consideration, unless it be said that there can be no acquisition of title by adverse possession except upon actual notice to the holder of the paper title. The elements of adverse possession, it is said, and the rule is, I think, of universal application, are that such possession must be actual, visible, exclusive, hostile, and continued during the time necessary to create a bar under the statute of limitations. 1 Cyc. 981. These elements all concur in point of fact and in time in the case at bar as respects the right of way

occupied by the structures mentioned and claimed by the plaintiff by virtue of his adverse possession. The trial court, as well as this court in its majority opinion, relies upon *Northern Counties Investment Trust Co. v. Enyard,* 24 Wash. 366, 64 Pac. 516, *supra,* as authority for its decision to the effect that occupancy of a right of way for farming purposes is not necessarily adverse in character, but is to be regarded as permissive only. The same court in a later case, *Northern P. R. Co. v. Ely,* 25 Wash. 384, 65 Pac. 555, hold that adverse possession of a portion of a railroad right of way, inconsistent with its use as such, maintained for the statutory period of limitation confers title on the occupant, and bars the right of the railroad company to recover possession. It is also held, if a railroad company permits portions of its right of way to be occupied by settlers under preemption and homestead laws without objection for more than 10 years, and such occupants plat the land into city lots, make valuable improvements thereon, and expend vast sums of money for taxes and assessments, the company is estopped from asserting title to such portions of its right of way. . In the body of the opinion it is said, by Dunbar, J., writing the opinion of the court:

. "The case of *Northern Counties Investment Trust Co v. Enyard,* 24 Wash. 366, 64 Pac. 516, cited in appellant's reply brief in support of the position that possession for more than the statutory time on a railroad right of way was not adverse, but permissive, shows, on examination, that the circumstances surrounding it were altogether different from the circumstances surrounding the case at bar. Under the circumstances of that case it was held that the occupancy of a portion of the right of way of the railroad company by the owner of a servient estate was not inconsistent with the easement, the occupation there being for the purposes of farming the land embraced in the right of way. We do not desire to extend the rule ennunciated in that case. But, whether or not the facts in that case warranted the conclusion reached by the court, certainly

the circumstances shown by the record in this case will not justify the conclusion reached in that, that the occupancy of the defendants, taken in connection with the improvements and the use to which the improvements were put, was not inconsistent with the appellant's right to use the same for railroad purposes."

So in the case at bar I feel quite confident that the rule as respects the use of the right of way for agricultural purposes should not be extended, as is held in the majority opinion, so that the occupancy and use of a mill or elevator and similar structures which are really a part of the real estate, and which cannot be removed without great damage and detriment to the owners, is to be regarded as a permissive holding and one not inconsistent with the company's possession of its right of way upon which to operate its trains and conduct its business as a common carrier. It is for these reasons that I dissent and favor an affirmance of the judgment entered in the court below. I have not thought it necessary nor prudent to discuss the question of whether in any case a railroad company can be deprived of its right of way by adverse possession. For the purposes of this case, I have assumed that it could be done; and as the judgment herein must at all events, according to the majority opinion, go in favor of the railroad company, a discussion of that question by me would not change the result.

SEDGWICK, J., concurring.

The position of the court upon this important question should not be misunderstood. It is not intended to hold that "no title can be acquired by adverse possession of any part of a railroad company's right of way except upon actual notice of the adverse claim of title which is in fact brought home to the company holding such right of way." The conduct of the parties with reference to the possession may be such as to constitute notice. This is expressly stated in the third paragraph of the syllabus. In the opinion of the court in *Northern P. R. Co. v. Ely*, 25 Wash.

384, 54 L. R. A. 526, referring to a former opinion of that court, it is said: "Under the circumstances of that case it was held that the occupancy of a portion of the right of way of the railroad company by the owner of a servient estate was not inconsistent with the easement." This is the ground of our decision in this case. It is thought that the circumstances of this case are such as to show that the occupancy of the right of way by the plaintiff was permissive on the part of the company.

It seems to be conceded that the trial court was right in its conclusion that the right of way held as an easement may be lost by adverse possession under the same conditions that a fee title right of way may be lost. Another proposition seems likewise to be conceded. The fencing and occupation of a part of the right of way does not necessarily constitute adverse possession; whether it would or would not do so depending upon the circumstances. Ordinarily, the taking possession of a piece of land and fencing it with a substantial fence is strong evidence of an adverse possession. Such a fence is permanent in its nature, and will become a part of the real estate under the same conditions and circumstances that an elevator building would become a part of the real estate. An absolute rule that the construction of an elevator upon the land would be sufficient evidence of an adverse holding, while inclosing the land by a permanent fence would not be so considered, is inconsistent. Such a rule cannot be derived from the authorities. A permanent fence around the land would exclude the railroad company from using it as a right of way until such fence was removed, and so perhaps the building of an elevator thereon would also, and in either case the question whether the holding was adverse or permissive must depend upon the relations of the parties and the conditions surrounding the transaction. It does not seem to be needed to restate the facts in this case, but, among other conditions existing, it will be borne in mind that, when the buildings were erected upon the land in question, there had been a long course of

6

dealing between these parties involving the use of a part of the right of way by the plaintiff. When he first began using the company's right of way, he did so under a lease from the company for a nominal rental, and, though the lease was temporary, he erected an elevator upon the ground so leased. When this lease expired it was not formally renewed, nor was any new lease executed. The plaintiff continued in the same line of business that he had prosecuted before, and in that business he needed the the privilege of erecting similar buildings upon the company's right of way. It is true that he placed buildings upon this land that are generally considered of a permanent character, but they were such buildings as are commonly placed upon the right of way with the permission of the company. The former action of this plaintiff indicates this. The holding of the court is that, in view of such conditions as these and many other circumstances disclosed in the record, a part of which are recited in the opinion, the action of the plaintiff in erecting these buildings was not so inconsistent with a recognition of the right of the railroad company as to notify the company that he held this land in hostility to its rights. This is not placed upon the ground that he failed to give actual notice to the company that he did not recognize any right of the company to the possession or use of this land, but rather upon the ground that the circumstances and conditions were such that the company might reasonably suppose that the plaintiff intended to recognize the rights of the company to use this land when necessary for right of way purposes.

With this understanding of the opinion, I concur in the conclusion that the defendant is entitled to the relief asked for in its cross-petition.