## ELIZABETH WAGGONER

*v.*

## THE WABASH RAILROAD COMPANY.

*Opinion filed April 17, 1900.*

1. RAILROADS—*when condition of right of way contract is not enforcible.* A condition in a contract granting right of way that a depot should be constructed upon the land, cannot be enforced by grantees of the then owner of the land.

2. SAME—*actual occupation of all parts of right of way with structures is not essential.* It is not essential to the possession of a strip of land granted for right of way that the railroad company occupy all parts of the land with tracks or other structures.

3. SAME—*building corn-cribs on right of way does not defeat company's rights.* The building of corn-cribs or other temporary structures upon the right of way so as not to interfere with the company's use is not such adverse possession as defeats the company's rights under its right of way agreement or stops the running of the Statute of Limitations in its favor.

4. SAME—*when grantee is bound by grantor's right of way agreement.* Where an agreement between a land owner and a railroad company for conveyance of right of way has been acted upon and the railroad constructed, the provisions of the agreement are binding upon the land owner and his grantee with notice.

5. SAME—*a grantee with notice cannot complain of company's laches waived by grantor.* A purchaser of land with notice of a railroad company's right of way across the same cannot complain of *laches* of the railroad company, which has been waived by permitting the company to enter under a contract.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. W. G. COCHRANE, Judge, presiding.

WALTER EDEN, for plaintiff in error.

I. A. BUCKINGHAM, for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an action of ejectment by plaintiff in error, against defendant in error, begun in the circuit court of Moultrie county August 30, 1898, "to recover possession

of one hundred feet of land on each side of the railroad track of the defendant, as located over the north half of the north-west quarter of section 1, township 12, north, range 5, east of the third principal meridian, in Moultrie county, Illinois." The pleas were not guilty and twenty years' limitation. Plaintiff filed an affidavit of title from a common source, viz., Samuel Scott. A trial by jury resulted in a verdict for the defendant, on which judgment was entered, to reverse which this writ of error is prosecuted.

It appears from a statement of the case by counsel for plaintiff in error, that about the year 1871 or 1872 one Samuel Scott was the owner of the land in controversy; that at that time the Bloomington and Ohio River Railroad Company, being about to build a railroad across said land, procured from the said Samuel Scott an agreement in writing, by which he released to said company the right of way through any and all lands owned by him along the line of said road in the State of Illinois, of necessary width for embankments, excavations, slopes, spoil-banks and burroughing-beds, and agreed with the company to convey, upon the construction and completion of the railroad, to it, by deed in fee simple, the strip of ground in controversy, and in the meantime, until said road was constructed, he authorized the company to enter upon said lands by its contractors, agents or servants, and do any and all things necessary for the construction of the railroad. It was further provided by this written agreement that the company should erect and maintain a depot or station house and side-track on said land. Thereupon, about the year 1871 or 1872, the railroad was built, either by the Bloomington and Ohio River Railroad Company or by the Chicago and Paducah Railroad Company, the evidence being silent upon the question as to which company constructed said road. On the 8th day of April, 1876, Samuel Scott conveyed to Martin L. Waggoner, the husband of plaintiff in error, all of said eighty

acres of land, and he, being joined by his wife, on the 20th day of November, 1877, conveyed to William H. Waggoner, by deed, the same land, and on the same day the latter, being joined by his wife, conveyed it to Elizabeth Waggoner, plaintiff in error, each of these deeds being duly recorded. On April 2, 1880, M. L. Waggoner conveyed, by warranty deed, to the Chicago and Paducah Railroad Company, the strip of land in controversy, and by this deed the railroad company agreed to maintain a station house or depot and side-track on said land, and this deed was duly recorded. The Chicago and Paducah Railroad Company succeeded the Bloomington and Ohio River Railroad Company, but there is no documentary evidence introduced in the case of any transfer of the rights of one company to the other. The Wabash, St. Louis and Pacific Railway Company succeeded to the latter company, and on or about the 23d of June, 1880, the railroad property was conveyed by deed, by John M. Cook, James C. Parrish and Charles Ridgely, to the Wabash, St. Louis and Pacific Railway Company, under a decree of the United States court rendered January 21, 1880. The Wabash Eastern Railroad Company succeeded to the Wabash, St. Louis and Pacific Railway Company, but no formal transfer of the rights of the latter has been introduced in evidence in this case. The Wabash Railroad Company, defendant in error, succeeded to the Wabash Eastern Railway Company, but no formal transfer of the rights of the latter appears in the evidence. The several successions are shown by parol proof. The time of the transfers is not shown, except that to the Wabash, St. Louis and Pacific Railway Company. On the 18th of April, 1879, M. L. Waggoner caused to be surveyed and recorded a plat of the town of Bruce, being a tract of land east of the land in controversy and adjoining thereto, and on this plat the land in controversy is designated as railroad land, one hundred feet wide on each side of the track.

It is admitted that the evidence shows the defendant in error "to have been in possession since 1871 or 1872, continuously, of a parcel of ground on which the railroad track and the side-tracks are located and also that part of the ground occupied by stock pens." There is therefore no controversy between the parties as to the fact that the defendant's predecessor, the Bloomington and Ohio River Railroad Company, or its successor, the Chicago and Paducah Railroad Company, entered upon the premises as early as 1871 or 1872 and constructed the railroad side-tracks and stock pens upon the same, and that the different companies have been continuously in possession of that part of the right of way contracted for, from that time to the bringing of the suit. It is, however, insisted that certain parts of the strips of land on either side of the track were not then taken possession of or since occupied by the defendant or other companies. These parts are designated as the land which lies north of the station house and west of the track, and that which lies south of the station house and west of the track. That part lying north of the station house and east of the track, it is admitted, was used, in the construction of the road, for placing material thereon, and the south part, north of the station house and east of the track, is claimed to have been occupied by various parties with corn-cribs during a greater part of the period since the construction of the road to the bringing of the suit. Also, it is admitted that the part north of the station house and east of the track, lying north of the cribs and south of the public highway on the north end of the track, has never been occupied with anything, being rough and unsuitable for use; that a small part west of the track and south of the station house was used for a time by third parties in cultivating potatoes; that a house was built by a third party west of the track and occupied for a time by permission of the plaintiff's husband, etc. No attempt is here made to give any description of either

of the parts so claimed to have been unoccupied by the defendant or in the possession of others.

While it is insisted that the court improperly admitted in evidence, over the plaintiff's objection, the deed from Cook *et al.* to the Wabash, St. Louis and Pacific Railway Company of date June 23, 1880, because it did not contain a description of the premises, it is not denied that the evidence, independently of that deed, (which was not objected to,) clearly shows that the several railroad companies succeeded each other in the occupancy, control and operation of said railroad, and that defendant, in its succession to the preceding companies, has been in continuous possession of the parts above named, using them for tracks, etc., since 1871 or 1872.

Three defenses were relied upon by the defendant: First, the contract between Samuel Scott and the Bloomington and Ohio River Railroad Company; second, the twenty year statute of limitations; and third, the seven year statute of limitations under color of title, possession and payment of taxes.

We are at a loss to perceive how, under the conceded facts, the jury could have found a different verdict than the one returned by it. The first named railroad company entered upon and took possession of a part of the premises in 1871 or 1872, and constructed the road-bed and tracks thereon under its agreement with Scott, the then owner; and that it and its successors, including the defendant, continued to occupy, use and operate the railroad thereon, continuously, to the bringing of this suit, is admitted. As to that part taken possession of and occupied under the Scott contract, it is clear the possession was lawful, and, therefore, as to it the action could not be maintained. *Sands* v. *Wacaser,* 149 Ill. 530, citing *Turpin* v. *Baltimore, Ohio and Chicago Railroad Co.* 105 id. 11.

There is some controversy between the parties as to whether the condition in the Scott agreement (that a depot or station house should be erected and maintained

on the land) had been complied with until a few years prior to the bringing of the suit, but the law of this State is that the condition was void. (*Mobile and Ohio Railroad Co.* v. *People*, 132 Ill. 559.) If valid, it could have been availed of only by Scott or his heirs. His grantees, either before or after the breach, acquired no right to enforce it against the defendant. (*Boone* v. *Clark*, 129 Ill. 466; *Mott* v. *Danville Seminary*, 129 id. 403; 3 Elliott on Railroads, sec. 942, notes 4, 5; 6 Am. & Eng. Ency. of Law,—2d ed.—506-508.) Moreover, it is conceded that long prior to the bringing of this action it had been complied with. Neither is it claimed that the plaintiff, or any of the parties under whom she claims, at any time demanded from the defendant, or its predecessors, a performance of that stipulation. In no view of the law and the evidence can it be said the possession of the several railroad companies, confessedly lawful in its inception, became wrongful because of a failure to perform that condition.

A verdict in favor of the plaintiff for the whole of the premises would have been manifestly unauthorized. In fact, as we understand the argument of counsel for plaintiff in error, the main contention is that plaintiff was entitled to recover, not the whole, but only such parts of the premises described in her declaration. It is utterly impossible to frame a description of such parts from the evidence, and no attempt is made to do so in the argument. For instance, the metes and bounds of "that part of the premises lying north of the station house and west of the railroad" cannot be determined from any facts proved on the trial. One witness stated incidentally that the depot is about the center of the forty acres, doubtless meaning about half the distance across the forty north and south; but such an indefinite location of the station house furnishes no datum for ascertaining the description of land north of it. Nor is there any evidence whatever tending to show the dimensions of the station house,

or how much ground is occupied by it, the side-tracks or stock pens; and so the quantity and description of such of the parts which it is claimed were not occupied is wholly undetermined and undeterminable from the proofs. The fifth clause of section 30 of chapter 45 (Hurd's Stat. 1899, p. 730,) provides: "If the verdict be for a part of the premises described in the declaration, the verdict shall particularly specify such part as the same shall have been proved." Manifestly this requirement could not have been complied with under the evidence in this record.

We are, however, of the opinion that the weight of the evidence is to the effect that the defendant, and the companies under which it holds, have held such legal possession as should entitle it to the benefit of the Scott agreement to the whole of the premises described in the declaration. The objects and purposes of railroad rights of way are such that an actual occupancy of every part of it at one and the same time is impracticable, not to say impossible, and the rule is: "If the character and extent of the possession, and the acts of the company, considered with reference to the nature of railroads, are such as to clearly indicate an adverse claim to a right of way of a certain width, a right of way to that extent may be acquired by prescription, although it is not all occupied by track or any other structures."

The fact that the right of way here in controversy was never fenced by the railroad companies, especially on the east side, is explained by the fact that a station was located on the land and a village platted. Side-tracks were laid on the east of the main track, and there was more or less shipping done from that point.

The evidence clearly establishes the fact that soon after the execution of the Scott agreement he moved his fence one hundred feet from the location of the track, thereby manifesting an intention to carry out the contract on his part. The company, in the construction of

its road, according to the testimony of at least some of the witnesses, used the strips of land on the west for placing building material and laying its track. On the east side parts of the ground was similarly occupied during the construction, and has since been devoted to such uses as appear to have been necessary in operating the railroad. The building of cribs and other structures upon the right of way, whether by the consent of the railroad company or the owner of the adjoining lands, did not amount to such adverse possession by others as to defeat the rights of the railroad companies under their agreement with the original owner or stop the running of the Statute of Limitations in their favor. Some of the structures were temporary in their character, and none of them were shown to be such, as they were occupied and used, as to interfere with the use of that portion needed for right of way. It cannot be seriously contended that the temporary cultivation of a small portion of a right of way in potatoes, without objection on the part of a railroad company, should have the effect to deprive it of its right to the land under agreement with the owner.

In the *Sands-Wacaser case, supra,* it was held that where an agreement of a land owner and a railway company for the conveyance of a strip of land for a right of way is once acted upon without objection and the railroad constructed, its provisions will be binding upon the original owner and his grantee with notice. It was also there held that a purchaser of land with notice of a railway company's right of way across the same cannot be heard to complain of the *laches* of the company, which his grantor had waived by permitting the company to enter under the contract. It is impossible to distinguish this case from that. There is no pretense that the plaintiff below did not have full knowledge of the claim of the defendant to this right of way at the time she took the title. Her husband fully recognized that claim by his warranty deed to the Chicago and Paducah Railroad

Company on April 2, 1880, and by his plat of the village; and while these acts, being after the conveyance to his wife, would not, without notice and acquiescence, bind her, they do tend to show that the use of the right of way had been such as to apprise others of the title and claim thereto by the railroad.

We think the evidence in this record authorized the verdict of the jury upon the ground that the defendant was rightfully in possession of the premises under the contract of its predecessor, the Bloomington and Ohio River Railroad Company, with Samuel Scott, and in view of that contract, and the subsequent acts of the several companies, a clear right by prescription to the whole of the premises had become vested in the defendant. It is unnecessary, therefore, to consider the third defense relied upon below, and all question as to the payment of taxes under claim of color of title may be considered as eliminated from the case.

Many objections are urged to the ruling of the court in giving and refusing instructions, to which we have given careful attention; and while some just criticism may be made upon one or more of those given on behalf of the defendant, the defects are not of such a character, in the foregoing view of the merits of the case, as to materially affect the rights of the plaintiff. Those which were asked by the plaintiff and refused were either given in others or were objectionable in form. Besides this, being satisfied that no other verdict than that which was returned could have been properly rendered, we would not reverse the judgment below for error in the giving of instructions.

The judgment of the circuit court is in conformity with the law and facts of the case, and will accordingly be affirmed.                    *Judgment affirmed.*