MICHIGAN MILLING CO. *v.* ANN ARBOR RAILROAD CO.[1]

ADVERSE POSSESSION.

> The use of a strip of railroad right of way for a railroad scale by an abutting mill owner is not adverse and hostile to the railroad company, though exclusive, where the railroad company builds and maintains a switch over the scale, has exclusive possession of the key to the switch, and receives and delivers cars over the switch for the mutual benefit of the parties.

Cross-appeals from Washtenaw; Kinne, J. Submitted February 5, 1904. (Docket No. 85.) Decided November 29, 1904.

Bill by the Michigan Milling Company against the Ann Arbor Railroad Company to restrain the removal of a side track. From the decree rendered both parties appeal. Reversed and bill dismissed.

*Frank E. Jones* and *Jasper C. Gates*, for complainant.

*A. J. Sawyer & Son* (*Alex. L. Smith*, of counsel), for defendant.

MOORE, C. J. In 1902 the city of Ann Arbor passed an ordinance providing for a change in the grade of the road of the defendant company so as to carry the railroad track over the streets by an overhead bridge. In order to construct the railroad in accordance with the provisions of the ordinance, it became necessary to raise the grade of the embankment on the company's right of way about 13 feet between Washington and Liberty streets. The complainant owns a tract of land abutting on First street between Washington and Liberty streets, and extending

---

[1] Rehearing denied May 12, 1905.

back to the railroad company's right of way. At this point the right of way of the railroad company is 50 feet wide. The complainant carried on a general milling business upon its property. Its main building is located as indicated on Exhibit A. In the rear of the building is a set of railway scales built by the complainant for the purpose of weighing cars shipped by the complainant over defendant's railway. These scales are about 36 feet long by 10 feet wide. Until shortly before the beginning of the suit there was a side track from the main track of the railroad across the scales, and some little distance northerly upon the complainant's property. In order to raise the embankment as contemplated, it became necessary to remove this side track, which was done a short time before this suit was begun. This action is brought for the purpose of enjoining the defendant from interfering with the scales or the land upon which they stood, it being claimed that the title was in the complainant both by deed and by prescription. The title of the railway company was derived under a deed from Kling & Weber to the Toledo & Ann Arbor Railroad Company dated September 6, 1878, which granted " a strip of land fifty feet wide along the line of railroad of said party of the second part as now located, that is, twenty-five feet on each side of the middle of said line over and across the property known as the City Brewery property," etc.

The defendant claims it and its predecessors have been in possession of said railroad right of way ever since, and that it is in substantially the same location now that it always was; there having been no change in the center line of more than a few inches. It is the claim of complainant that the map shows the original line of the road opposite the property of complainant to be on a curve of 1 deg. 42 min., and that this would bring the right of way outside of the scales.

At the time of the making of this deed of September 6, 1878, the grantors owned the property on both sides of the railway track, and were using it as a brewery plant.

There was at that time a building in the rear of the mill of the complainant, instead of the railway scales which are now there, and a small building on foundations extending about 20 feet westerly from the main building, about 33 feet in length. This building was subsequently taken down. The foundation walls were located as indicated upon the map, Exhibit A, by D, D, D.

The complainant's title to its property was derived under a series of mesne conveyances from Kling & Weber, the last being a deed from Allmendinger & Schneider to the complainant. This deed is dated April 21, 1900, and conveys "all that part of the following described lands which lie east of the track of the Ann Arbor Railroad Company * * *," this being followed by a description of the property on both sides of the railroad by metes and bounds.

In the year 1887 the building in the rear of the main mill building was taken down, and Allmendinger & Schneider, who then owned the milling company's property, built at their own expense the railway scales in question. The first load was weighed on them on the 25th day of November, 1887. There had been a side track put in by the railroad company before this time, which was taken up temporarily when the scales were constructed, but was relaid over the scales. The evidence showed that the scales were put in at a cost to Allmendinger & Schneider of about $600, and that they made changes in their milling machinery and apparatus to enable them to operate in connection with the scales at an expense of about $2,000.

It is the claim of defendant that no question was ever made between the owners of the milling company property and the officers of the railroad in regard to the ownership of the ground upon which the scales are located; that the scales have been used by complainant, in connection with the railroad company, for the purpose of weighing cars and their loads shipped by and to complainant over the line of defendant's railroad; the railroad company placing cars upon the siding and scales in question and

Exhibit A.
(attached to amended Bill)

removing them when requested. The roadbed in question was prepared by complainant, the rails were laid by defendant, and since then the track has been kept in repair by the railroad company. Practically no use was made of the scales by any one but complainant. The scale beam was inside the mill. The switch to the siding was in the control of the railroad, and its employés had the key to the switch.

The bill of complaint alleges that the property described therein "has been used, possessed, and occupied by complainant and its predecessors in ownership as parts and portions of, and as together constituting, one business plant, for the period of fifteen years and upwards, and that complainant and the said predecessors in ownership for during said period have been in actual, continuous, visible, notorious, distinct, hostile, and exclusive possession of the whole of said plant, including the scales and every part thereof, and of the whole of the land and real estate upon which said plant, including every part of said scales, is located."

It alleges the tearing out of the side track, and the threat to destroy the scales and to build the embankment, and prays for an injunction, and that defendant shall be compelled to permit a connection to be made over said scales with defendant's track. Defendant denied complainant had obtained title by adverse possession, and avers the necessity of building the embankment, and its intention to provide complainant with a connection with its road.

The circuit judge was of the opinion that complainant had obtained title by prescription to the land upon which the platform scales rest, and granted a permanent injunction "restraining the defendant from trespassing upon the real estate and property known as the Central Mills property, and from tearing down or in any manner interfering with the said platform scales, the foundation thereof, and the coal shed and grainroom situated on the southwest part of the said Central Mills property, adjoining the lands and right of way of the defendant," and said, "This

embraces all the relief to which, in my opinion, the complainant is now entitled."

Both parties have appealed.

Complainant says the questions involved are:

"1. Who has the title to the land occupied by the scales and the land south of the scales and west of the mills?

"2. It being conceded by the answer that complainant has a statutory right to a side track for the benefit of its mill, and connected with defendant's main track, is complainant entitled to a decree requiring defendant to comply with the statute in that regard?"

Defendant contends the questions involved are:

"1. Had the complainant title by deed to the triangle in controversy?

"2. Had it acquired title by prescription?"

Counsel for complainant say in their brief:

"The amended bill appears on pages 27 to 37 of the record, and the amended answer on pages 44 to 61. It was on these that the cause was heard and decided. Why the original bill and answer are also printed, we cannot understand."

A careful reading of the amended bill of complaint does not disclose to us an averment therein that complainant got title by deed to the land covered by the scales, and the land directly south thereof and west of the mill. The averments of the bill are that as early as in 1878 their predecessors came into possession of the property indicated on the plat by the lines D, D, D; that the side track was put in and the scales erected in 1887, and the property covered thereby had been in the possession of complainant and its predecessors since 1878. It is true that in the oral argument, as well as in the brief, it is claimed that, if the right of way opposite complainant's premises was laid out upon a curve of 1 deg. 42 min., it would leave the scales and side tracks untouched by the right of way. There is no mention of this claim in the amended bill, and we are unable to find that the fact is established by the testimony. We then are confronted with the question, Did complain-

ant get title by prescription? In relation to this question, counsel for complainant say:

" It is undisputed that when Ailes & Allmendinger purchased the City Brewery property, in 1882, the buildings were standing thereon which covered the space D, D, D, substantially as shown on Exhibit A; that Ailes & Allmendinger then took possession of all these buildings, believing that they owned the land upon which they were standing. It is unquestioned that the addition D, D, D, was an essential part of the brewery plant, and that the side track and scales, which have always been within the same westerly boundary, have been an essential part of the milling plant, without which it could not be successfully operated. Moreover, this side track and these scales from 1883 and 1887, when they were respectively constructed, have always been used exclusively by Ailes, Allmendinger & Schneider, and their successors in title, including the present complainant, and for their business. On the hearing below, defendant's counsel contended that our possession of the scales and side track had not been exclusive, and based this contention on the fact that defendant's servants always placed the cars on the scales and side track, and removed them therefrom. We reply: These cars were then in our service, and were transporting our goods to and from our mill, and we were paying this defendant for the use of these cars, and for the work of its servants and locomotives in delivering these hired cars of ours, loaded with our goods, upon our scales and our siding. Substantially, defendant was our servant, moving our hired cars loaded with our goods upon land in our possession, and the title to which we were claiming."

Had the buildings remained substantially as they were in 1882, there can be no serious question but that their continued use by the predecessors of the complainant would have ripened into a title; but the record discloses they were torn down in 1887, and the scales were erected by complainant's predecessors, and, upon a roadbed prepared by it, rails were laid by defendant, over which cars owned by defendant and other railroads for the use of complainant have been transported for the mutual advantage of both parties. The railroad not only got pay for the freight to and from complainant's plant, but it was re-

lieved of the necessity of furnishing some other portion of its railroad track for the use of said cars while they were being loaded and unloaded. Suppose the railroad company was in fact the owner of the title in fee of the land where this side track and scales were put at the time they were constructed; would the use that has been made of this track and scales as disclosed by the record be an indication of a possession on the part of the complainant that was adverse and hostile to defendant? We think not. It is a use which inures to their mutual benefit, and which is not inconsistent with a title in fee in either of them. See *Perkins* v. *Nugent*, 45 Mich. 156, and cases cited therein; *Marble* v. *Price*, 54 Mich. 466; *Chabert* v. *Russell*, 109 Mich. 571; *Smith* v. *Hitchcock*, 38 Neb. 104. We think the learned judge reached a wrong conclusion in relation to complainant having obtained title by prescription.

Counsel say they are entitled to a decree requiring defendant to accommodate them with a side track, in accordance with the provisions of section 5249 of the Compiled Laws of 1897. Defendant, by its answer, avers it intends to provide a connection with complainant's plant. In view of the conclusion we have reached in relation to the other branch of the case, we think this question may be safely left to future developments, and should not be passed upon by us now.

The decree is reversed, and bill of complaint dismissed, with costs.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., did not sit.