### Bernhard Gerhards, Administrator, v. Chicago Junction Railway Company.

### Gen. No. 13,549.

NEGLIGENCE—*what does not constitute.* *Held,* under the evidence
in this case, that it was not negligence to "kick" a railroad car from
a switching train, and also that it was not negligence to conduct
the affairs of a railroad yard in the usual, regular and practicable
way of doing railroad work.

Action in case for death caused by alleged wrongful act.  Appeal
from the Circuit Court of Cook county; the Hon. JOHN GIBBONS,
Judge, presiding.  Heard in this court at the March term, 1907.
Affirmed.  Opinion filed January 13, 1908.

**Statement by the Court.**  This appeal was taken
from a judgment of *nil capiat* and for costs by the
Circuit Court of Cook county against the plaintiff (the
appellant here) in an action therein brought by him
against the Chicago Junction Railway Company (the
appellee here), for causing by its negligence the death
of his intestate.  The judgment was rendered on the
verdict of a jury.

There were, after the cause was brought, and before
it finally went to the jury, some amendments in the
pleadings not necessary to mention.  When the case
was finally submitted to the jury, the declaration con-
sisted of five counts.  The first charged the negligence
of the defendant to consist in shoving or switching a
freight car of such size and dimensions that it ex-
tended beyond the track on which it was being switched
such a distance that when it reached the point opposite
where a car on another track, under which Gerhards,

the plaintiff's intestate, was working, was located, "it would be likely to strike the blocks or jacks upon which said car in its raised position was resting, without in any manner warning or notifying Gerhards of its likelihood so to do. By reason whereof, when the said car so being switched by the defendant had reached a point opposite the car under which said Gerhards was working, it struck the jacks or blocks with great force, knocking the car from its raised position down to and upon the said Gerhards, killing him."

The second count alleged that the defendant moved and operated a train of cars along a railroad track near the car under which Gerhards was working, and detached and uncoupled one of the cars from the train of cars so switched, and switched the same away from said train, without any guard or control over it, and by reason thereof the said car struck a certain "brakebeam" lying along said track, and shoved the same against the jacks or blocks supporting the car under which Gerhards was working, and thereby knocked that car down upon Gerhards and killed him.

The third count avers generally the negligent moving and operation of a car along a railroad track adjacent to the car beneath which Gerhards was working, by reason whereof the car struck the jacks or blocks supporting the said car Gerhards was working under.

The fourth count says the defendant carelessly and negligently failed to observe the brakebeam, and carelessly and negligently failed to adopt any precautions to avoid striking the same, and by reason thereof one of the cars it was moving along the railroad track struck said brakebeam and caused the same to strike the jacks or blocks supporting the car under which Gerhards was working.

The fifth count charges the defendant with carelessly and negligently suffering and permitting a certain brakebeam to be and remain in such close proximity to the railroad track on which it was switching cars that whilst the defendant was engaged in moving its

engine and cars a certain car struck said brakebeam and threw the same over and against the jacks or blocks supporting the car under which Gerhards was working.

At the trial evidence was offered for the plaintiff, and at its conclusion the defendant moved for a peremptory instruction in its favor, which was denied. The defendant offered no evidence. The jury returned a verdict for the defendant.

A motion for a new trial was denied and judgment given on the verdict. This appeal followed. In this court it is assigned as error: That the court erred in giving and refusing instructions; that it erred in its rulings on evidence and in overruling the motion for a new trial.

EDMUND S. CUMMINGS, for appellant.

WINSTON, PAYNE & STRAWN, for appellee; JOHN BARTON PAYNE and JOHN D. BLACK, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The place where the death of plaintiff's intestate occurred was on land between Forty-sixth and Forty-seventh streets and a block and a half west of Halsted street in Chicago. It was traversed by many railroad tracks running in a southerly and northerly direction and spreading out like a fan in the vicinity of Forty-seventh street. The land was in fact a switching yard. The appellee, the Chicago Junction Railway Company, leased the tracks from the Union Stock Yard & Transit Company.

A few of the tracks ran straight north and south. One of these tracks, not far from the center of the yard from east to west, is known in this record and in the argument before us as track No. 1. The Chicago Junction Railway Company used it as a switching track for its railroad switching business at the Union Stock Yards.

The accident occurred October 21, 1902. Some time prior to that time the Chicago Junction Railway Company, by a verbal agreement, had leased all the tracks east of the track No. 1 to Armour & Co. for a repair and storage yard. Track No. 1 and the tracks west of it were not leased to Armour & Co. The tracks leased to Armour & Co. were kept in repair by the employes of the Chicago Junction Railway Company. The Chicago Junction Railway Company switched Armour's cars in and out of these tracks leased to Armour & Co., and were paid a regular switching charge for so doing.

The appellant's intestate, Bartholomaus Gerhards, was employed by Armour & Co. as a car repairer in this leased yard. On the day of the accident he went to work with John Ritter and a man named Nolan, also car repairers, to repair one of Armour's refrigerator cars that was standing on the track known in this case as track No. 2, which was the track immediately to the east of track No. 1, and was the most westerly of the tracks leased to Armour. This refrigerator car was a short distance north of Forty-seventh street.

These three men had previously on that morning repaired a car on the track next east of No. 2, and at about nine o'clock went to work on the car in question. Nobody else but they worked on it. They took out the trucks from the south end of the car and rolled them forward. To do this it is quite plain that the brakebeam hanging from the south end of the car, a heavy piece of timber with cast iron shoes and brake rods and couplings attached to it—the timber being a four by six or six and three-quarters and from six feet six inches to six feet eight inches long—had to be removed from the car. The plaintiff's witness Ritter swears to this—which is self-evident—although he says at another time that he does not know whether the brakebeam was taken off before the trucks were taken out or not, as he did not help to take it off. As we have said, however, it is plain that it was so taken

off, and Ritter testified that it was at some time taken off, and that as he did not help take it off, it must have been Gerhards and Nolan who did it. He testifies also that he saw it after it was taken off and it had been laid between track No. 1 and No. 2. In order to get the trucks out it was also necessary to jack up the car, and two jack-screws had been put under each south corner of the car when the accident happened. The wheels of the north end of the car seem to have been blocked so that they could not move. At about half past ten or eleven o'clock Ritter and Gerhards were under the car at work, Ritter under the middle of the car and Gerhards under the south end. Nolan was between tracks No. 1 and No. 2, north of where the brakebeam had been laid. There were other people employed in repairing the cars about there, but only one other eye-witness of the accident, apparently—a man named Shebak, who was working on the trucks of a car standing to the north of the car under which Gerhards was working and on the same track. Shebak saw the accident and at the trial of this cause detailed the manner of it. There had been switching going on all the morning on track No. 1. At about half past ten or eleven a "big furniture car" was "kicked" north by a switching train on track No. 1. There was nobody on the "kicked" car. When the witness Shebak saw it, it was about fifty feet south of Gerhards' car, and about two hundred or three hundred feet north of Forty-seventh street, and running three or four miles an hour. Shebak saw the switching train after kicking the car north run south again to the other side of Forty-seventh street, where switch tracks from the east ran into track No. 1.

The furniture car, as it came along track No. 1, caught by some one of its parts—its sill, step or truck, the witness thought—a brake lever attached to the brakebeam that was lying between tracks No. 1 and No. 2. This brake lever was a piece of iron from two to three feet long, an inch thick and three inches wide,

and was projecting from the brakebeam towards track No. 1.

The effect of the collision was to drag the brakebeam along a plank which lay parallel with the tracks and between them, until it struck the blocks on which the jack-screws at the south end of Gerhards' car were standing and knocked them out from under the jacks, which fell and let the south end of the car down, crushing and killing Gerhards. Ritter was able to crawl out from under the car nearly uninjured.

The space from the center of track No. 1 to the center of track No. 2 was twelve feet and nine inches, and that between the nearest rails of the two tracks was seven feet and eight inches. Both witnesses for the plaintiff, Shebak and Ritter, testify that switching was constantly going on on track No. 1. Ritter says there was switching on track No. 1 constantly, "off and on, just as they required cars in there," from seven in the morning until six in the evening, and Shebak says they were switching cars on that track "pretty nearly all day"—"every few minutes."

We are unable to see in this narrative any evidence of negligence on the part of the defendant. It was not negligence to "kick" one of its own cars from a switching train onto its own track; nor was it rendered negligence by the fact there was no one on the car. It may be said to be within the knowledge of everyone who ever saw a railroad yard that this is a usual, regular and often the only practicable way of doing the railroad's work.

There is no evidence of negligence on the part of the railroad in its not observing the brakebeam and its position, or in permitting it to be there, for there is no evidence even how long it had been there or that the employes of the railroad had any opportunity to see it, while there is evidence that it was placed where it lay by Gerhards himself, or his fellow-servant Nolan, within a comparatively short time before the accident.

In the face of this absence of proof that the defend-

ant was negligent, the plaintiff could not in any event recover, and this renders unnecessary a discussion of the objections of the appellant to the rulings of the court below, except perhaps as to the admission of Ritter's answer that it must have been Gerhards and Nolan who took the brakebeam off the car, because he, Ritter, did not help. We cannot see that this answer was prejudicial. It was preceded and followed by statements which clearly showed the jury that it was a conclusion of the witness, which did not exclude the possible hypothesis that Nolan might have, alone and unaided, laid the brakebeam near track No. 1. The conclusion, however, in the sense in which the jury must have understood it, was a legitimate one from the other facts stated by witness. The brakebeam was a large and heavy appliance and was so described that the jury as well as Ritter could form an opinion as to the ability, or likelihood of one man's handling it after it was removed. But in any event, we think it makes no difference whether Gerhards and Nolan or Nolan alone placed the brakebeam in its dangerous position. Counsel say if Nolan did it alone, then Gerhards could not be charged with contributory negligence, and that it would be the combined negligence of Nolan and the defendant which caused the death of Gerhards, and that for this defendant would be liable.

The vice in this reasoning is that there is in it no ground for the assertion that in such case there was any negligence of the defendant combining with the negligence of Nolan to cause the accident. The negligence would be in such case solely the negligence of Nolan, as we view the evidence. The question is not whether the defendant has proved contributory negligence, but whether the plaintiff has proved any negligence on the part of the defendant.

As to the rejection of evidence offered by the plaintiff that employes of Armour & Co. sometimes worked on cars west of track No. 1 and crossed that track

to get to them, we are unable to see the relevancy or materiality of that evidence in this controversy any better than did the trial court. The accident did not occur through any want of care in the observation of men crossing the tracks, but from an entirely different cause.

Our views being as indicated in regard to the merits of the case, we do not feel called on to discuss the instructions given and refused. Even if they were not accurate, their inaccuracy would not have been ground for reversal under the circumstances of this case. The Supreme Court said in Waggoner v. Wabash Railroad Company, 185 Ill. 154: "Being satisfied that no other verdict than that which was returned could have been properly rendered, we would not reverse the judgment below for error in the giving of instructions."

We do not mean, however, to imply that we find the instructions as applied to the evidence in the cause obnoxious to the objections urged against them by the appellant.

The judgment of the Circuit Court is affirmed.

*Affirmed.*