# Alexander City U. W. & S. Co. *v.* Central of Ga. Railway Co.

### *Ejectment.*

(Decided April 15, 1913.    Rehearing denied June 5, 1913.
62 South. 745.)

1. *Appeal and Error; Harmless Error; Not Affecting Result.*—Where plaintiff would have been entitled to the affirmative charge had the errors complained of not have occurred, a judgment for plaintiff will not be reversed because of such error.

2. *Adverse Possession; Burden of Proof.*—One seeking to show title by adverse possession has the burden of proving not only the fact of possession, but also that such possession was adverse and contained all the elements requisite or necessary to make the possession adverse.

3. *Same; Elements.*—Adverse possession must be hostile, actual, open, notorious, exclusive and continuous for ten years under a claim of right, and if any of these elements are absent it will not bar the legal title.

4. *Same; Character; Intent.*—The intention of the possessor fixes the character of the possession as adverse or otherwise, and possession cannot be adverse if in any contingency it is intended to be subservient to the true title.

5. *Same; Character; Hostile.*—The construction of buildings by the landowner, or the remaining in possession by the landowner, of a part of the land over which a right of way has been granted to a

[Alexander City U. W. & S. Co. v. Central of Ga. Railway Co.]

railroad, in the absence of evidence that such holding was adverse to the railroad company's rights, and that it had knowledge thereof, will be construed to be subservient to the rights of the railroad company, and not a hostile adverse claim.

6. *Same; Property Subject.*—A railroad right of way, although a public highway, is not devoted to a public use in such a sense that title thereto cannot be acquired by adverse possession.

7. *Same; Streets and Highways.*—No adverse possession of land devoted to a public use, as for street or roads, can ever ripen into, or give rise to, title to such land, since such use is necessarily an obstruction to the highway, and a public nuisance which lapse of time cannot legalize.

8. *Same.*—Possession becoming adverse after amicable entry, where the possession of a part of the right of way of a railroad by a warehouse company was not adverse, but permissive, and no notice was ever brought home to the railroad company or its predecessors in title of a change of the character of possession, the company's legal title was not divested.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Common law ejectment by the Central of Georgia Railway Company against the Alexander City Union Warehouse & Storage Company. Judgment for plaintiff and defendant appeals. Affirmed.

STROTHER & NOLEN, for appellant. To entitle plaintiff to recover in an action of ejectment he must show title in himself at the commencement of the suit and at the time of trial, and he must recover on the strength of his own title and not on the weakness of the title of the defendant.—*Rottenberry v. Brown*, 142 Ala. 630; *Carpenter v. Joiner*, 151 Ala. 454; *McCreary v. Jackson Lumber Co.*, 148 Ala. 247; *Cofer v. Schening*, 98 Ala. 338; *Graden v. Hurt*, 80 Ala. 116. Plaintiff cannot recover upon facts merely estopping defendants from denying plaintiff's ownership.—*Harrison v. Alexander*, 135 Ala. 307. To show title sufficient to recover in ejectment, plaintiff must show regular chain of title back to the United States government or back to some grantee who was in possession, except as against a mere

trespasser.—*Henry v. Brown,* 149 Ala. 323.   A map
or plat, like other documentary evidence is the highest
evidence of what it contains and a witness cannot tes-
tify as to its contents.—*Anniston City Land Co. v. Ed-
mondson,* 127 Ala. 445.   A party desiring to terminate
the relationship of tenancy at will must give notice of
his desire or intention to terminate before he can make
a written demand for delivery of possession.—*Barnwell
v. Stephens,* 142 Ala. 609.   And the notice must be
given before any suit can be maintained for the posses-
sion of the premises.   Under the statute ten days notice
must be given, but in this case the plaintiff would be re-
quired to give sixty days notice, if the tenant at will
agreement is binding on the defendant at all, for that
is a part of the contract.   As to what is necessary to
terminate a tenant at will agreement, see *Barnwell v.
Stephens,* 142 Ala. 609; Code 1907, sec. 4732.   The gen-
eral affirmative charge should not be given for the plain-
tiff unless there is no evidence upon which the jury could
find in favor of the defendant.   A person in the open,
notorious, continuous, adverse possession of land for
ten years acquires a title upon which he may defend
against an action of ejectment.

LONDON & FITTS, for appellee.   While sections 4832-4,
Code 1907, provide for the ten-year limitation in land
suits it has been universally held that the term of ten
years adverse possession must be continuous and unin-
terrupted in one holder or several holders who are in
privity of title, and that there cannot be a tacking be-
tween those where there is neither a privity of blood
nor estate.—*Riggs v. Fuller,* 54 Ala. 141; *L. & N. v.
Philyaw,* 88 Ala. 264; *Lucy v. Tenn. Co.,* 92 Ala. 246:
*Carter v. Cavalier,* 108 Ala. 563; 1 Cyc. 1007.   No notice
was filed as required by Acts 1892-3, p. 478.   The use of ʼ

the property for warehouse purposes did not constitute
an adverse holding, and the presumption is, in the ab-
sence of evidence to the contrary that the entry and
use was permissive.—*Lucy v. Tenn. Co., supra; Elyton
L. Co. v. S. & N. Co.*, 95 Ala. 635; *Newton v. R. R. Co.*,
110 Ala. 474; 2 Elliott on Railroads, sec. 938, B; 22
N. Y. 217; 11 N. W. 641; 10 L. R. A. 855; 58 S. W. 309;
64 S. W. 485; 66 Am. St. Rep. 562; 41 S. E. 299; 24
South. 701.   The tendency of the later decisions is to
hold that a railroad right of way may not be lost by
an adverse holding thereof.—54 L. R. A. 522; 54 L. R.
A. 526; 197 U. S. 1; 190 U. S. 267; 118 N. W. 527; 93
N. W. 928; *R. R. Co. v. Taylor*, 102 Ala. 224; *T. & C.
R. R. Co. v. E. A. R. R. Co.*, 75 Ala. 524; *Jones v. R. R.
Co.*, 70 Ala. 231.

MAYFIELD, J.—Appellee brought a common-law
action of ejectment against appellant for a certain strip
of land 29 feet wide and 173 feet long.   The plaintiff
claimed the property as a part of its right of way; the
property is being used by the defendant as a warehouse
site.

The proof shows the title to have been in one J. J.
Cleveland.   It appears indubitably that he was the com-
mon source of title.   Plaintiff claims through a deed
from Cleveland to the Savannah & Memphis Railroad
Company and then traces title to itself by foreclosure
proceedings, and appropriate conveyance, so that, but
for the claim and showing of the defendant, the plain-
tiff showed a valid legal title to the land sued for.

The defendant claims title by deed from A. J. Coley,
executed on the 10th day of September, 1907, and by
virtue of adverse possession of one Douglass and of
Coley tacked onto its own.   It is conceded, however,
that if defendant Douglass and Coley, one or all, acquir-

ed title, it was acquired from J. J. Cleveland or some of his grantees. It is also apparent, from an examination of all the muniments of title, that, if defendant or any of its predecessors ever acquired title, it was wholly and solely by adverse possession. They have not even color of documentary title. In fact, the documentary evidence of title which it introduced or offered in evidence precludes any claim of color of title by making one of the boundaries the railroad right of way; and it is made to appear beyond dispute that the land in question is a part of the right of way unless it has been lost, as such, by adverse possession.

So the only important disputed question to be determined by this action was whether or not the defendant, or those through whom it claims to have acquired title, had so acquired it by adverse possession.

We are of the opinion that this question was correctly decided and adjudicated by the lower court against the claims of the defendant. There are a number of reasons which seem to us to be conclusive as to this question and to be so conclusive by the undisputed facts in the case. We feel sure, for the reasons we shall hereafter state, that if any error intervened on the trial it was without possible injury to the defendant, appellant here, for the all-sufficient reason that the plaintiff would have been entitled to the affirmative charge if such error had not intervened, or if it should now be corrected by us.

The burden of proof is always on him who seeks to show title acquired alone by adverse possession, to show not only the fact of possession, but to show also that his possession was adverse, and that it contained, or carried with it, all the elements requisite or necessary to make the possession adverse.

These necessary elements have been repeatedly declared by this court, and they are as follows:

"Adverse possession must be: First, hostile and under claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; fifth, it must be continuous. If any of these elements are wanting, it will not effect a bar to the legal title.—*Lawrence v. Ala. State Land Co.*, 144 Ala. 524, 41 South. 612; *Hoyle v. Mann*, 144 Ala. 516, 41 South. 835." Mayf. Dig. p. 16.

"In order for a party to establish a title to land by adverse possession, it must be shown that for a period of ten years he or those under whom he claims held hostile possession under a claim of right; that it was actual, exclusive, open, notorious, and continuous.—*McCreary v. Jackson Lum. Co.*, 148 Ala. 247, 41 South. 822; Id. 137 Ala. 278, 34 South. 850." 6 Mayf. Dig. p. 15.

"Adverse possession rests in the intention of the possessor. The intention guides the entry and fixes its character. Possession must be hostile to the owner; the claim of title must be absolute and unconditional; it cannot be adverse if in any contingency it is intended to be subservient to the true title. Possession held under a conveyance of timber rights construed and held not to be adverse against the owner.—*Gulf Red Cedar Co. v. Crenshaw*, 148 Ala. 343, 42 South. 564; Id., 131 Ala. 117, 30 South. 466, 90 Am. St. Rep. 22; Id., 138 Ala. 134, 35 South. 50." 6 Mayf. Dig. p. 15.

The defendant proved the fact of possession, and proved it to have continued for the statutory period of ten years; but we are of the opinion that the proof offered by the defendant failed to establish some of these elements necessary to make the possession adverse. The proof on the other hand, considered in connection with the necessary presumptions arising from the undisput-

ed facts, shows, we think, that the possession of the defendant was, in its inception and for a long time thereafter, permissive and not hostile or under an absolute claim of right on the part of those holding the possession.

The following authorities we think assert correct principles of law which are applicable to the facts in this case and which are conclusive (1 Decen. Dig. p. 498, subject "Adverse Possession," § 60 [6]):

"The building on a railroad company's right of way of corncribs and other structures, which, as used, did not interfere with the use of the portion needed for the right of way, does not amount to such adverse possession by others as will defeat the company's right under a contract by the original owner to convey it or stop the running of limitations, based on possession thereunder, in its favor.—*Waggoner v. Wabash R. Co.*, 185 Ill. 154, 56 N. E. 1050."

"Where a landowner remained in possession of a part of land over which a railroad right of way had been granted, such possession, in the absence of evidence that his holding was adverse to the railroad company's rights, and that it had knowledge thereof, would be construed to be subservient to the rights of the railroad company.—*Chicago, M. & St. P. Ry. Co. v. Snyder*, 120 Iowa, 532, 95 N. W. 183."

"There is not an adverse and hostile possession which will give title against a railroad company where a manufacturer erects scales at the rear of its factory on the right of way of the railroad company, and such company lays a side track thereto, over which it transports cars to and from the scales for the benefit and advantage of both parties.—*Michigan Milling Co. v. Ann Arbor R. Co.*, 138 Mich. 216, 101 N. W. 574."

"The use by adjoining landowners of otherwise unused parts of the right of way of a railroad company for grazing and cultivation is not adverse to the enjoyment of the easement.—*Roberts v. Sioux City & P. R. Co.,* 73 Neb. 8, 102 N. W. 60 [2 L. R. A. (N. S.) 272, 10 Ann. Cas. 992]."

"Whether a railroad company has a fee or an easement, any permitted use by an abutting landowner of a part of the right of way up and until needed for railway purposes exclusively cannot be said to be adverse in any hostile sense.—*Smith v. Pittsburgh, C., C. & St. L. Ry. Co.,* 26 Ohio Cir. Ct. R. 44."

"Occupation of right of way by the owner of the fee, so long as it is not required for railroad purposes, is not adverse, so as to start the statute of limitations running against the railroad company.—*Mobile & O. R. Co. v. Donovan,* 104 Tenn. 465, 58 S. W. 309."

"Where the grantors or plaintiffs in ejectment occupied, cleared, fenced, and cultivated land for over 10 years, which was subject to a railroad right of way, such occupation was not adverse, but permissive, since it was not inconsistent with such right of way, and hence the railroad's easement was not extinguished by plaintiff's possession.—*Northern Counties Inv. Trust v. Enyard,* 24 Wash. 366, 64 P. 516."

We do not, however, mean to hold, in accordance with one of the contentions of appellee, and as to which some cases are cited, that the right of way of a railroad is land devoted to a public use, in such manner, sense, or extent that title thereto cannot be acquired by adverse possession; in other words, that the rule as to railroad rights of way is the same as that applied to streets, public roads, etc. The rule is different when applied to the two kinds of highways. While both are public high-

ways, they are not public in the same sense and to the same extent.

No adverse possession of land which is devoted to the use of the public for a street or a road can ever ripen into or give rise to a title to such land. Every such use is necessarily an obstruction of the highway and a public nuisance which no lapse of time can legalize.

The rights of the public to such use cannot be barred or foreclosed by the statute of limitations which does not clearly include them, nor can such use of the public be lost or destroyed by the doctrine of equitable estoppel.—*Harn v. Dadeville,* 100 Ala. 199, 14 South. 9; *Cross v. Morrison,* 18 N. J. Eq. 305; *Hoboken Co. v. Hoboken,* 36 N. J. Law, 540.

A municipal corporation, as an entity, may in some cases be barred by the statute of limitations or the doctrine of equitable estoppel; but, as to lands devoted to such a public use, it is the right of the sovereign people themselves that is affected by the use of a public street for purposes other than those to which the land was dedicated and publicly used. The doctrine is that the sovereign, in such cases, cannot be thus deprived of his rights; nor will he allow any of his subjects, by wrongful conduct, to destroy this public right and use. —*Webb v. Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62. This same rule, however, does not apply to a railroad right of way which is not in actual use. Title to portions of it may be acquired by adverse possession and may be thereby vested in an individual so acquiring it, to the exclusion of the railroad corporation. There is good reason for the difference of the two rules. While the right of way is, in a sense, a public highway, and the land is taken for and devoted to a public use, it is nevertheless the private property of the

public utility corporation. The corporation's officials are not public officers, and its objects and purposes are private as well as public in a sense.

Streets belong to the sovereign (the people) ; they are created for this sole purpose, and not for the private benefit of any individual or corporation, private or public. Sovereign rights are not necessarily involved in the use of a portion of a railroad right of way for private purposes. While there might be, and sometimes is, such an obstruction of a railroad right of way as to constitute a public nuisance, the one in question is not such an obstruction or use. The wrong here complained of is private and not public.

These rules are well set forth, and the distinction well drawn, in the case of *N. Pac. Ry. Co. v. Ely*, 25 Wash. 384, 65 Pac. 555, 54 L. R. A. 526, 87 Am. St. Rep. 766, and in note thereto. While that case was overruled on .appeal to the Supreme Court of the United States (197 U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639), there is nothing in the opinion contrary to what we hold in this case, but we think it supports our holding. The Supreme Court of Washington held that the land in question, which was a part of the railroad right of way, had been acquired by adverse possession so as to defeat the title of the railroad company. The Supreme Court of the United States held the contrary and overruled the decision of the state court, but did so on account of the construction of the act of Congress which constituted the grant of the right of way. The court held that there was no absolute grant of the fee nor even of the easement, but that it was conditioned for a specified purpose only, and that the right of way reverted to the United States when it ceased to be used for the purpose for which it was granted, and that to acquire title to the land in question by adverse possession would be to de-

prive the United States of its rights and titles, as well as to defeat the act of Congress and the grant of the land for this particular purpose. The decision was not placed upon the ground that title to land used for a railroad right of way could not, in any case, be acquired by adverse possession; but the contrary is clearly intimated, if not decided. The court, quoting from *Townsend's Case,* 190 U. S. 271, 23 Sup. Ct. 672, 47 L. Ed. 1044, which construed the same statute, said: "Manifestly the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company. On the contrary, the grant was explicitly stated to be for a designated purpose, one which negatived the existence of the power to voluntarily alienate the right of way or any portion thereof. The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted."—and then concludes: "So far as title to portions of the right of way could be lawfully acquired from the railway company, defendants below, appellees in the Supreme Court, had acquired title to their parcels by adverse possession and occupied the same position as if they had received conveyances, which the act of April 28, 1904, operated to confirm."

It will be found from an examination of the authorities, which are collected in a note appended to the report of *Ely's Case* as reported in 87 Am. St. Rep. 766, that both the great number and weight of authorities

[Alexander City U. W. & S. Co. v. Central of Ga. Railway Co.]

are in accordance with our holding in this case. There are a few to the contrary; but some of those, like the decisions of the Supreme Court of Massachusetts, depend upon statutes which expressly prohibited titles to railroad rights of way from being acquired by adverse possession.

In the case at bar, however, the possession of the defendant was not shown to be adverse but permissive. No notice of a charge of the character of that possession was ever brought home to the plaintiff or its predecessors in title; and, the burden of proof being on the defendant to show the adverse possession, he must of course fail in his proof necessary to show that the legal title was divested by adverse possession. This renders it unnecessary to pass upon the 105 assignments of error separately.

It appears without dispute that plaintiff had the legal title to the land in question, unless the title had been divested by adverse possession, and we think we have conclusively shown that the title was not so divested, and that the same result would have followed if all possible errors on the trial had been corrected. So this is a clear case in which, if any errors intervened, they were surely without prejudice to either party; and the only judgment and verdict were rendered which could have been rendered on the trial.

It therefore follows that the trial court properly gave the affirmative charge for the plaintiff and properly refused the like charge to the defendant.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.