(118 So. 383)

## GIDDENS v. ATLANTIC COAST LINE R. CO. (4 Div. 351.)

Supreme Court of Alabama.    Oct. 18, 1928.

A. G. Seay, of Troy, for appellant.

Arrington & Arrington, of Montgomery, for appellee.

FOSTER, J. The track of the appellee extends in a northwesterly to southeasterly direction through SW¼ of SW¼ of section 5, NW¼ of NW¼ and SW corner of NE¼ of NW¼, section 8 (but not the N½ of NE¼ of NW¼, section 8). The road was built in 1889. The controversy does not extend to the roadbed, but appellee is suing appellant for that part of said three 40-acre tracts outside of the roadbed, and extending 50 feet on each side of the center line of the track, but not including the station house or roadbed. Appellee claims the land in controversy under color of title and by adverse possession. The three tracts of land were owned by Randall Kent. He died in 1887, left a widow, Arsula (or Sula) Kent, and seven children. The family remained upon the land in charge of the widow, and in May, 1889, the widow alone executed a conveyance to the railroad company, predecessor of appellee, embracing a right of way 100 feet wide, including two of the tracts, but the other was described as the N½ of NE¼ of NW¼, section 8, whereas the land in controversy does not touch this tract, but extends through the SW corner of NE¼ of NW¼, section 8. With such rights the railroad was built in 1889. In July, 1889, the estate of Randall Kent was divided, and the land in question was conveyed to Arsula Kent for life, with remainder to H. B. Kent, then a small child. They remained in possession until the widow died in 1907, after which H. B. Kent remained in possession until he sold it in 1909 to the appellant, who has had possession, as he claims, until the time of trial.

In making the division it is claimed that the land in section 5 was misdescribed, so that the deed from the heirs to Arsula and H. B. Kent did not include the SW¼ of SW¼ of section 5, though they claim to have had possession of it continuously with the other land. After the division of the land in July, 1889, and in September, 1890, the widow and five children, not including H. B. Kent, conveyed a right of way to the railroad 200 feet wide, "over any of our lands in Pike county," for a nominal consideration. At that time the land in question had been conveyed to the widow for life with remainder to H. B. Kent, except for the alleged error in section 5, of all of which the widow and H. B. Kent were in possession, as they claim, except the roadbed. The deed in 1889 by the widow to the railroad reserved the right to cultivate to the track. The affirmative charge was given to the appellee, though appellant offered evidence tending to show possession in himself, H. B. Kent, and Arsula Kent continuously to the institution of this suit.

Considering first the land in section 5: When the road was built in 1889, the railroad company had a deed from the widow alone. This gave color of title, the widow reserving the right to cultivate to the track. When the heirs divided, the land in section 5 was not properly described, but the widow and H. B. Kent claim that they continued to occupy and claim it, one for life and the other in remainder. Then, in 1890, the widow and five heirs, not including H. B. Kent, conveyed to the railroad. The legal title then was in all the heirs, subject to the widow's claims with an equitable claim of right in the widow for life and remainder to H. B. Kent. The failure to record the deed of division is not controlling. From 1890 to 1907, the date of the death of the widow, the railroad had a good legal or equitable right. After the widow died in 1907, H. B. Kent claimed the land under an equitable right, it being misdescribed in his deed, as appellant claims; and the claim of railroad was not superior to whatever equitable rights H. B. Kent held thereafter. It is disputed as to whether the railroad has occupied the land in question, but title and possession have been claimed by H. B. Kent and his successors. The right reserved in the deed by Arsula Kent to cultivate died with her, as she only had a life estate. The subsequent possession by H. B. Kent and his successors was not in subordination to any contractual relations, and the jury should determine its nature, whether adverse or permissive. If it has been adverse for the statutory period, it has ripened into ownership, for title may be acquired by adverse possession to part of the railroad right of way. Seaboard Air Line Ry. Co. v. Banks, 207 Ala. 194, 92 So. 117; Cent. of Ga. Ry. Co. v. Faulkner, 217 Ala. 82, 114 So. 686; Alexander City v. Cent. of Ga. Ry. Co., 182 Ala. 516, 62 So. 745.

It is insisted that the rule that, when the right of way is "only an easement, occupation of a part of it by the owner of the servient estate until it is needed for the railroad is presumptively permissive" (L. & N. R. Co. v. Malchow, 216 Ala. 656, 114 So. 53; Cent. of Ga. Ry. Co. v. Faulkner, supra), is controlling, and such possession without notice to the railroad company of adverse claim does not defeat the right of the railroad. This rule would have application if the easement of appellee is found superior in right to the equitable claims of H. B. Kent. It had the life interest of the widow, but its rights as to H. B.

Kent ceased with her death. So that at the time it is claimed this principle applies, appellee only had a conveyance from heirs who had no rights superior to the equitable claims of H. B. Kent. We do not think, therefore, that the above principle operates against the claim of H. B. Kent to adverse possession. The rule by its terms only applies to the "superior easement of the railway company."

While color of title in the railroad will extend possession to the boundaries described therein (Sadler v. A. G. S. R. Co., 204 Ala. 155, 85 So. 380), this does not apply when another is in the actual adverse possession. Cogsbill v. M. & G. R. Co., 92 Ala. 252, 9 So. 512. The possession claimed by H. B. Kent and his successors was not the possession of the grantors to the railroad company. We think therefore it should have been left to the jury to determine the question of title by adverse possession with appropriate instructions as to the land in section 5.

The land in NW¼ of NW¼, section 8, is in stronger position for appellant, because there was no misdescription in the deed as to it. So that after the widow died in 1907, the paper title was in H. B. Kent, and therefore for the railroad to recover it was necessary to recover on title by adverse possession. It had title during the life of the widow, and color of title from five of the heirs, which would extend the possession in the absence of other actual adverse possession. H. B. Kent and his successors have claimed possession under their paper title. They have never conveyed to the railroad. Has the railroad acquired by adverse possession under its color of title? That was a jury question.

The land in the SW corner of NE¼ of NW¼, section 8, was in still stronger position for appellant, for though appellant appears in the record to have the paper title, appellee relies on adverse possession as against the apparent holder of the legal paper title, who also claims to have had possession.

On another trial, the court will cause the issues of adverse possession to be tried under his instructions giving effect to our conclusions as herein expressed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.